## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KUANTAY REEDER, | CIVIL ACTION NO. 22-04614 |
| Plaintiff, | SECTION A |
| | JUDGE JAY C. ZAINEY |
| v. | |
| | MAGISTRATE DIV 1 |
| JASON WILLIAMS, and | JUDGE JANIS van MEERVELD |
| ABC INSURANCE COMPANIES 1-10, | |
| Defendants. | |

## PLAINTIFF REEDER'S OPPOSITION
## TO WILLIAMS'S MOTION TO DISMISS

NOW INTO COURT, through undersigned counsel, comes the Plaintiff, Kuantay Reeder, who, provides this Opposition to Defendant Jason Williams's Motion to Dismiss.[1]

### INTRODUCTION AND BACKGROUND

The Orleans Parish District Attorney's Office ("OPDA") prosecuted Kuantay Reeder for a murder he did not commit. Despite overwhelming evidence indicating someone else committed the murder – including multiple statements made to prosecutors by their sole testifying eyewitness identifying another person and not Reeder as the killer – OPDA persisted in its prosecution against Reeder. Moreover, at no time before trial, or during trial, did OPDA reveal that their sole testifying eyewitness against Reeder at trial had previously said on two occasions that he had identified this other person and not Reeder as the killer; nor did OPDA reveal several prior convictions of their eyewitness, including one involving dishonesty; nor did OPDA reveal that the victim's mother originally believed that her son had been killed by this other person, because he (and not Reeder)

---

[1] R. Doc. 6.

had obtained her phone number immediately after the murder, which was followed by an "anonymous" voicemail later that day, saying "I killed that dog."[2]

OPDA ultimately secured the wrongful conviction of Reeder, in violation of his rights under the Fourth and Fourteenth Amendment to the United States Constitution. As a direct result Reeder was sentenced to spend the rest of his life in prison, without the possibility of parole. He then spent over twenty-eight (28) years in prison – suffering injuries unimaginable to most.

In 2021, while evaluating a second application for post-conviction relief filed by Reeder, OPDA's Civil Rights Division uncovered what it described as "significant exculpatory evidence that had never in 25 years been disclosed to defense counsel." Following the revelation of this information to Reeder's counsel, Reeder filed a supplement to his application for post-conviction relief. OPDA's Civil Rights Division filed "Stipulations in Response," admitting that OPDA should have disclosed some of the withheld information;[3] verifying that former OPDA prosecutors indicated they would not have disclosed notes from witness interviews as "a matter of practice;"[4] admitting that OPDA's failure to turn over this information made the jury's verdict "unworthy of confidence;" and conceding that Reeder's "conviction and incarceration violated the Constitution."[5] The district court then vacated Reeder's conviction and released him from prison.

Following his release, Reeder filed this action against Jason Williams, in his official capacity only, seeking to hold OPDA liable for the extraordinary injuries Reeder suffered.[6] In response, Williams filed a Motion to Dismiss under Fed. R. Crim. Proc. 12(b)(6), seeking to insulate OPDA from liability for the unconstitutional acts of his predecessor under the novel theory

---

[2] *See* R. Doc. 1 at ¶ 3.
[3] R. Doc. 1 at ¶ 98.
[4] R. Doc. 1 at ¶ 105.
[5] R. Doc. 1 at ¶ 98.
[6] R. Doc. 1.

that Louisiana's district attorneys act as state policymakers – not local policymakers – when creating and implementing intra-office policies regarding the acquisition of, security of, and disclosure of *Brady* materials.[7]

Defendant's Motion to Dismiss errs in multiple regards, starting with the legal vehicle for the motion.  As a procedural matter, Williams raises an issue that should be addressed under Fed. R. Civ. Proc. 12(b)(1), not 12(b)(6).  Moreover, there is no valid substantive ground for granting the Defendant's motion because the issue actually raised is squarely foreclosed by binding Fifth Circuit precedent.  The Motion to Dismiss must be denied.

### LAW AND ANALYSIS

**1. Defendant's Motion Raises an Issue under Fed. R. Civ. Proc. 12(b)(1), not 12(b)(6)**

Defendant Williams challenges the viability of Reeder's complaint in its entirety by means of a 12(b)(6) motion to dismiss the complaint for "failure to state a claim upon which relief can be granted."  But this is not the proper means of raising the issue at the heart of defendant's motion, which is actually subject-matter jurisdiction – which requires a motion under 12(b)(1).  As will be demonstrated, in this case a 12(b)(1) motion cannot be decided on the pleadings "as a matter of law" (Defendant's Memorandum, p.3).  At a minimum, Plaintiff Reeder is entitled to discovery, and ultimately, a hearing on any motion by defendant.  In a word, defendant's motion is premature – although ultimately it should be denied.

Moreover, this result is compelled even if it was proper for defendant's motion to be brought under 12(b)(6). Defendant's motion cannot be decided on the pleadings "as a matter of law," by virtue of section 12(d) of Federal Rules.  The motion presents "matters outside the

---

[7] R. Doc. 6.

pleadings;" it requires reference to external "facts," facts that Reeder disputes; and it makes multiple legal assumptions, some of which require far more than "a leap of faith."

As even a cursory reading of defendant's motion reveals, the defendant argues that he (the OPDA) is entitled to have Reeder's complaint dismissed, because (former) District Attorney Connick was, at all relevant times "acting as a state officer, exercising powers of the State of Louisiana. . . ." (Motion to Dismiss, p.1). Defendant contends that under *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658 (1978) and *McMillan v. Monroe County*, 520 U.S. 781 (1997), an official who is acting as a policy maker for a state, and not on behalf of local government, is not subject to a suit under 42 U.S.C. § 1983. As the defendant views it:

> . . . as a matter of law, . . . . a Louisiana district attorney represents and acts on behalf of the State of Louisiana when prosecuting offenses against the State, determining what evidence to disclose in the course of those prosecutions, and adopting policies relating to such disclosure. Accordingly, Mr. Reeder's § 1983 claim against the District Attorney's Office must be dismissed for failure to state a claim.

Pretermitting the fact that defendant's motion deals with only one of the <u>two</u> theories of liability Reeder sets out in his complaint (the other being that there was a failure to train the assistant district attorneys in the office, subjecting that office to liability under *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)), defendant ignores the fact that the case upon which he relies most heavily, *Daves v. Dallas County*, Texas, 22 F.4th 522 (5th Cir. 2023)(en banc) treats this precise question as a matter of <u>subject-matter jurisdiction</u>.

In the words of the Fifth Circuit:

> We must resolve jurisdictional questions before reaching the merits of the case, but "there is no mandatory 'sequencing of jurisdictional issues.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)). Even though not a jurisdictional issue, a court may "abstain under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), without deciding whether the parties present a case or

controversy." *Ruhrgas*, 526 U.S. at 585, 119 S.Ct. 1563. In addition, our sequencing of issues is affected by the fact this opinion is preliminary and is intended to guide a limited remand. In other words, we do not resolve all jurisdictional and abstention issues at this time. **We also consider it appropriate to analyze now whether any of the defendant officials were acting on behalf of Dallas County on bail matters. If none of them were, then there is no subject-matter jurisdiction under Section 1983 against the County, as it is only through the actions of these defendant officials that the County itself could be liable to the Plaintiffs.**

*Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 532 (5th Cir. 2022)(emphasis added).

Because motions to dismiss for lack of subject matter jurisdiction are brought under Fed. R. Civ. Proc. 12(b)(1), and not 12(b)(6), it would be appropriate to dismiss defendant's motion outright.  But since defendant could simply re-file the motion with a different title, but the same arguments, <u>and</u> since ultimately utilizing <u>either</u> section of the Fed. R. Civ. Proc. 12 leads to a denial of the motion, both types of motions will be addressed now, in the interest of judicial economy.

First, a 12(b)(1) motion requires a different analysis in the district court.  As the Fifth Circuit recently explained:

"We review a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) de novo," applying the same standard as the district court. *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (citation omitted). A district court may dismiss a case under Rule 12(b)(1) based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quotations omitted). Where, as here, the district court has expressly relied on its resolution of disputed jurisdictional facts, "those findings are reviewed for clear error." *Robinson v. TCI/US W. Commc'ns, Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

The burden of proving subject matter jurisdiction lies with the party asserting jurisdiction, and it must be proved by a preponderance of the evidence. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) ("The plaintiff must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence.") (citation omitted).  "We review evidentiary rulings," including both denial of an evidentiary hearing and denial of a request for discovery, "for abuse of discretion." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (citations omitted).

*In re S. Recycling, L.L.C.,* 982 F.3d 374, 379 (5th Cir. 2020).

In conducting its review, this Court should bear in mind the Fifth Circuit's opinion in

*Worldwide Parking, Inc. v. New Orleans City*, 123 Fed. Appx. 606 (Feb. 17, 2005), 2005 WL 375

WL 375945, which noted that the Supreme Court disfavors dismissal on jurisdictional grounds:

> . . . we are faced with the situation where **"the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action"**—in other words, where factual issues determinative of jurisdiction are intertwined with or identical to factual issues determinative of the merits.     *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.1981); *see Clark     v. Tarrant County, Texas,* 798 F.2d 736, 742 (5th Cir.1986) ("The questions of subject matter jurisdiction and the merits will normally be considered intertwined where the [same] statute provides both the basis of federal court subject matter jurisdiction and the cause of action."). The district court's resolution of the factual issue of whether the contract called for mostly professional services precluded federal jurisdiction because it doomed Worldwide's federal claim on the merits. In such a case, the rule of *Bell v. Hood* requires the district court to assume jurisdiction and decide the case on the merits. 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Montez,* 392 F.3d at 150; *Eubanks v. McCotter,* 802 F.2d 790, 792–93 (5th Cir.1986); *Williamson,* 645 F.2d at 416 (**"[A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action."**).
>
> In *Bell,* the Supreme Court recognized two narrow exceptions to that general rule, allowing jurisdictional dismissal if the federal claim: (1) "clearly appears to be immaterial or frivolous and made solely for the purpose of obtaining jurisdiction;" or (2) is "wholly insubstantial and frivolous." 327 U.S. at 682–83, 66 S.Ct. 773; *Williamson,* 645 F.2d at 415. Neither exception applies here. Because courts have held that the Public Bid Law creates a protectible property interest in the lowest responsible bidder, we cannot say that Worldwide's due process claim is immaterial, insubstantial, or frivolous. *See Williamson,* 645 F.2d at 416 (stating that the *Bell* exceptions apply **"only where the plaintiff's claim 'has no plausible foundation' or 'is clearly foreclosed by a prior Supreme Court decision.' "**) (quoting *Bell v. Health–Mor, Inc.,* 549 F.2d 342, 344 (5th Cir.1977)).

*Worldwide Parking, Inc. v. New Orleans City*, 123 F. App'x 606, 608–09 (5th Cir. 2005)(footnotes omitted, emphasis in original).

Here, the Court would not be able to dismiss Reeder's case based on the complaint alone,

because the complaint unquestionably alleges a federal cause of action – and the Court must

consider its allegations, including the jurisdictional allegations, as true. *Williamson v. Tucker*, 645

F.2d 404, 412 (5ᵗʰ Cir. 1981).[8]  In *Bell v. Hood*, 327 U.S. 678, 682-83 (1946) the Supreme Court held that ". . . a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statues clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." None of those situations exists here.

Nor is it possible for the Court to act on the complaint "supplemented by undisputed facts in the record," because there is no record.  There has been no discovery whatsoever to create a record – there is only the complaint, and defendant's motion to dismiss.  This is in direct contrast to the identical motion that was filed in *Floyd v. Dillman, et al.*, #19-cv-8769, Section "H,", U.S.D.C., E.D. of La., (Docs. #166, 166-1), which was filed ". . . with discovery essentially complete and trial only months away . . . ." (Doc. #173 – "*Plaintiff Floyd's Opposition to Defendant Williams' Motion to Dismiss*," p. 2).  It is also in contrast to the proceedings in *Daves v. Dallas County, Texas, supra*, which involved a hearing, multiple briefings, multiple appeals, and an *en banc* argument in the Fifth Circuit. *Daves*, *supra,* p. 530.

The complete absence of a record is also fatal to defendant's motion under the third possibility: "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Again, there is no record, it is not known what facts are disputed, including critical jurisdictional facts.

While in some instances challenges to subject-matter jurisdiction can be resolved on the complaint alone, without a record, those instances are exceedingly rare.  Moreover, such a

_____

[8] "A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction on the face of the complaint.  If so, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised – the court must consider the allegations in the plaintiff's complaint as true."

resolution <u>is not to be used</u> when the jurisdictional question is intertwined with the merits of the plaintiff's case.  *M.D.C.G. v. United States*, 956 F.3d 762, 768 (5th Cir. 2020).  In such cases, "district courts should 'deal with the objection as a direct attack on the <u>merits</u> of the plaintiff's case under either Rule 12(b)(6) or Rule 56.' *Montez*, 392 F.3d at 150 (internal quotations omitted) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981))."  *M.D.C.G. v. United States*, 956 F.3d 762, 768–69 (5th Cir. 2020)(emphasis added).

This principle was best explained in *Montez v. Department of Navy*, 392 F.3d 147 (5th Cir. 2004):

> In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. See *Land v. Dollar,* 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson,* 117 F.3d at 904. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case.
>
> However, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, <u>we have held that the trial court must assume jurisdiction and proceed to the merits</u>. In circumstances where "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the <u>merits</u> of the plaintiff's case" under either Rule 12(b)(6) or Rule 56. *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.1981); see also *Daigle v. Opelousas Health Care, Inc.,* 774 F.2d 1344, 1347 (5th Cir.1985).

*Montez v. Dep't of Navy*, 392 F.3d 147, 149–50 (5th Cir. 2004)(emphasis added).

When the same statute provides both the basis of federal court subject matter jurisdiction and the cause of action the questions of subject matter jurisdiction and the <u>merits</u> will normally be considered intertwined.  *Clark v. Tarrant County, Texas,* 798 F.2d 736, 742 (5th Cir.1986).

In sum, if the defendant's motion is treated for what it really is – a motion under Fed. R. Civ. Proc. 12(b)(1), it will be necessary to reach the <u>merits</u> of Reeder's claims.  This can only be done by permitting the case to proceed normally, i.e., with discovery, and motion practice.

**2. Treating Defendant's Motion as a Motion Under Rule 12(b)(6)**

Plainly defendant filed his motion under 12(b)(6) because it created the possibility of a dismissal case without the inconvenience and cost of having to defend the case on the merits, and because that was the procedural vehicle forming the basis for the Fifth Circuit's decision in *Arnone v. County of Dallas County, Texas*, 29 F.4th 262 (5th Cir. 2022).  But *Arnone* actually turns on the (in)adequacy of the pleadings filed by the plaintiff, something demonstrated by the judgment of the district court, and the *Arnone* panel opinion.

As the *Arnone* panel noted, plaintiff's attorneys filed no fewer than five amended complaints, in an effort to find a viable federal claim, and viable defendants.  *See Exhibit 1,* Documents #1, 7, 8, 25, 61, 85, and 113, in *Arnone v. Syed, et al.*, #17-cv-03027, U.S.D.C. N.D. of Tx., Dallas Division.  These complaints were met with motions to dismiss, filed under <u>both</u> 12(b)(1) and 12(b)(6). *See Exhibit 1*, Documents #24, 29, 62, 65, 66, 67, 90,

On April 30, 2020, the district judge entered an order dismissing all the defendants from the Fourth Amended Complaint.  With regard to defendant Dallas County (the legal equivalent of the Orleans Parish District Attorney, in this case), the district court found the following:

> Because Arnone **fails to allege and complain** of policies and conduct attributable to officials with final policymaking authority for Dallas County, he fails to state a section 1983 claim for municipal liability against Dallas County. Accordingly, his municipal liability claims against Dallas County must be dismissed.

*Arnone v. Syed, et al.*, #17-cv-03027, U.S.D.C. N.D. of Tx., Dallas Division, Doc. #112, p.21 (emphasis added).

Arnone was granted leave to amend his complaint, and he did so.  The County of Dallas again moved to dismiss, and the motion was granted, again, based on the inadequacy of the plaintiff's pleadings.  *Arnone v. Syed, et al.*, #17-cv-03027, U.S.D.C. N.D. of Tx., Dallas Division, Doc. #130, p.14.   It was never necessary to go outside of the pleadings to make the appropriate ruling – and the district court was extremely careful not to do so:  it confined itself to the pleadings, attachments to the complaint, and "matters of which judicial notice may be taken under Federal Rule of Evidence 201."[9]

Defendant's motion cannot be confined to Reeder's complaint, because in  defendant's motion to dismiss "matters outside the pleadings have been presented to . . . the court."  Fed. R. Civ. Proc. 12(d).  As stated earlier, defendant is asking this Court to make a determination that the District Attorney was acting as a State of Louisiana policymaker at all relevant times, and for all relevant matters, as opposed to a policy maker for the OPDA.  That determination involves a complex analysis under *McMillan, supra*, an analysis which turns on facts and factors that are simply not present in the (non-existent) record of this case.

Even a cursory reading of defendant's motion shows that it goes well beyond the pleadings. First, citing *Daves*, it asks this Court to assume that an analysis of the role of Texas state court judges in setting bail can be applied on a point-by-point basis to a Louisiana District Attorney. Next, citing *Arnone*, it asks the Court to equate bail revocation decisions for state court defendants with *Brady* disclosure policies, and with local training policies for assistants.  Third, it asks the Court to assume that the Fifth Circuit's decision in *Hudson v. New Orleans*, 174 F.3d 677 (5th Cir.

---

[9] The Fifth Circuit's opinion echoed the district court: ". . . on these <u>facts</u>, the Dallas County district attorney acted for the state – not county – when he promulgated or acquiesced to the polygraph policy."  *Arnone, supra*, p. 272 (emphasis added).

1999) is irrelevant.  Along the way, defendant's motion suggests that *Daves* effectively overruled the Fifth Circuit's decision in *Burge v. Parish of St. Tammany*, 187 F.3d 452 (5ᵗʰ Cir. 1999).

In short, as indicated by all the caselaw relevant to Rule 12(b)(1), as cited above, and by the very plain language of Fed. R. Civ. Proc. 12(d), defendant's must be treated as one that goes to the <u>merits</u> of Reeder's claims.  And any determination of those merits <u>at this stage</u> would be not just premature, it would be completely inappropriate.  In short, as a matter of procedure, the motion should be denied, and discovery should proceed normally.

### 3. Controlling Precedent Forecloses Defendant's Argument

Looking beyond the procedural issue to the substance of the Motion to Dismiss, it fares no better: Defendant's argument is foreclosed by controlling Fifth Circuit precedent. Defendant argues that Reeder has failed to state a claim against OPDA because, when a Louisiana district attorney creates policies concerning the disclosure of *Brady* materials, those acts are "attributable to the State of Louisiana—not the Parish of Orleans, not the City of New Orleans, and not the 'District Attorney's Office' as an independent local government entity."[10] Therefore, as the argument goes, OPDA, as a "local government entit[y] cannot be held liable" for these policies.[11]

But the Fifth Circuit squarely addressed this issue in *Burge v. Parish. of St. Tammany*: "in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of Brady material," the "district attorney's office" is liable "as an independent local entity."[12] [13]

---

[10]  Motion to Dismiss at p. 1.

[11]  Motion to Dismiss at p. 13.

[12]  *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999).

[13]  This conclusion refutes Defendant's contention that "*Burge* never squarely answers" whether a "Louisiana district attorney act[s] on behalf of the State of Louisiana, or on behalf of the 'district attorney's office' (an independent local governmental entity), when he or she creates policies relating to disclosure of evidence in prosecutions for state-law crimes." However, for good

Defendant seeks to circumvent controlling precedent by arguing that *Daves*[14] and *Arnone*[15], undermine the *Burge* decision. This argument is likewise unavailing – *Burge* remains good law.

It is well-established in the Fifth Circuit that only "intervening precedent by [the court] sitting en banc or a Supreme Court precedent" can overturn a prior panel's decision.[16] Even "[a]n en banc decision cannot overturn a binding published panel decision unless it does so clearly."[17] *Arnone* therefore, could not overturn *Burge* because it is not an en banc decision. And while *Daves*, was issued by the en banc court, that decision analyzed different public officials (county judges) under a different state's law (Texas) – unhelpful for addressing the acts of district attorneys under Louisiana law. And critically, *Daves* makes absolutely no mention of *Burge*, much less holding that it is overturned.

The Defendant likewise emphasizes *Arnone's* determination that *Crane I and Crane II*[18] were undermined by the *Daves* decisions, suggesting that *Burge* was likewise undermined.[19] But as *Arnone* emphasizes, *Crane I* and *Crane II*, were decided <u>before</u> the Supreme Court established the controlling analytical framework in the *McMillian* decision.[20] Conversely, *Burge* was decided <u>after</u> *McMillian* and in fact, relies extensively upon its analytical framework.[21]

---

measure, it should be noted that *Burge* began its analysis acknowledging that "Supreme Court's cases on the liability of local governments under § 1983 instruct us to ask <u>whether governmental officials are policymakers for the local government</u> in a particular area, or on a particular issue." *Burge*, 187 F.3d at 468 (emphasis added).

[14] *Daves v. Dall. Cty.*, 22 F.4th 522, 527 (5th Cir. 2022) (en banc).

[15] *Arnone v. Cty. of Dall. Cty.*, 29 F.4th 262, 264 (5th Cir. 2022).

[16] *FDIC v. Dawson*, 4 F.3d 1303, 1307 (5th Cir. 1993).

[17] *United States v. Vega*, 960 F.3d 669, 675 (5th Cir. 2020).

[18] *See Crane v. Texas*, 759 F.2d 412, 415 (5th Cir. 1985); *Crane v. Texas*, 766 F.2d 193, 195 (5th Cir. 1985).

[19] *See* Motion to Dismiss at p. 17 (citing *Arnone*, 29 F. 4th at 270-72).

[20] *See Arnone*, 29 F.4th at 271.

[21] *See Burge*, 187 F.3d at <u>469-70.</u>

Moreover, the decisions in *Daves* and *Arnone* are not incongruent with the decision in *Burge*. The Supreme Court in *McMillian* anticipated the same public officer would be treated differently in different states: "since it is entirely natural that both the role of [the public officer] and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare [the public officer] to be county officers in one State, and not in another."[22]

In short, neither *Daves* nor *Arnone* overturns, abrogates, or otherwise undermines the panel's decision in *Burge*. The Defendant's invitation to reexamine binding Fifth Circuit precedent that forecloses his argument should be rejected.

## 4. Under the *McMillian* Framework, Louisiana District Attorneys Are Local Policymakers

Even if this Court accepts Defendant's invitation to reexamine the issue despite binding Circuit precedent – and it should not – Defendant's motion should still be denied. Any application of the analytical framework established in *McMillian*[23] makes clear that, <u>under Louisiana law</u>, district attorneys are acting on behalf of an independent local government entity – not the State – when establishing internal policies and conducting training regarding the acquisition of, security of, and disclosure of *Brady* materials.

The framework established by *McMillia*n directs courts to look to state law provisions, including their legislative histories and judicial interpretations, in order to discern the legislative "intent"[24] as to whether the particular public official acts for the state or a local government entity when performing the particular function in question. This analysis focuses on multiple

---

[22] *McMillian v. Monroe Cty.*, 520 U.S. 781, 795 (1997).
[23] The Defendant acknowledges that *McMillian* is the "controlling Supreme Court decision" on this issue. *See* Motion to Dismiss at p. 6.
[24] *See McMillian,* 520 U.S. at 786-87.

considerations, including: (1) the historical background of the particular public official;[25] (2) whether the official is "designated" as a state or local official;[26] (3) whether the state is liable for the official's tortious acts;[27] and (4) whether state-level officers can direct and control the officials in the performance of their duties. [28]  All of these factors cut in Reeder's favor.

### a.  Historical Considerations

The *McMillian* Court framed the question broadly: "We simply ask whether Sheriff Tate represents the State or the county when he acts in a law enforcement capacity." *McMillian,* 520 U.S at 785-786.  To answer it, one factor considered was "the history of sheriffs."[29]  Although the dissent in *McMillian* was extremely critical of that history,[30] it must be accepted as supporting the conclusion that in Alabama a sheriff acts for the state in law enforcement matters.  That is certainly not true of the history of the office of district attorney in Louisiana.

In what is described as "the first detailed study of when, how, and why American state and local prosecutors became elected officials," the article by Michael J. Ellis entitled *The Origins of the Elected Prosecutor*, 121 Yale L.J. 1528 (2012) provides a history that is antithetical to any claim that American district attorneys in general act for the state, and fatal to any claim that Louisiana district attorneys do so.

First, unlike sheriffs, district attorneys in the United States (including Louisiana) are not a product of the common-law:

---

[25] *See Id.* at p. 793-95 (discussing "the history of sheriffs" from English common law to our nation's founding).
[26] *Id.* at 787.
[27] *Id.* at 789.
[28] *Id.* at 789-91.
[29] *McMillian*, 520 U.S. at 793.
[30] "The Court's reliance on 'the ancient understanding of what it has meant to be a sheriff,' *ante,* at 1741, is no more persuasive than its interpretation of Alabama law."  Justices Ginsberg, Stevens, Souter and Breyer, dissenting.  *McMillian*, 520 U.S. at 803.

> The United States is the only country in the world where citizens elect prosecutors. Local public prosecutors – whether called district attorneys, state's attorneys, prosecuting attorneys, or county attorneys—originated in colonial American **without counterpart in eighteenth-century England**.

*The Origins of the Elected Prosecutor*, *supra,* p. 1530 (footnotes omitted)(emphasis added).

As Ellis notes, although prosecutors were originally appointed government officers, between 1832 and 1860 "nearly three-quarters of the states in the Union decided to give voters the right to elect prosecutors. *Id.,* (footnote omitted). According to Ellis, this was part of a larger reform movement created by popular dissatisfaction with political patronage:

> Reformers hoped popular election of district attorneys would deprive governors of a patronage opportunity. Moreover, they hoped **that district attorneys elected by the voters of each county would be more responsive to the criminal justice priorities of local communities than prosecutors selected by a governor or legislature located in the state capital.**

*The Origins of the Elected Prosecutor*, *supra,* p. 1535 (footnotes omitted)(emphasis added).

In Ellis's words: "[e]lecting prosecutors also allowed communities to maintain <u>control over the functions of local government</u>." *The Origins of the Elected Prosecutor*, *supra,* p. 1558 (emphasis added).

Louisiana began electing prosecutors in 1852, as a result of the 1852 Constitutional Convention. *The Origins of the Elected Prosecutor*, *supra,* p. 1569. In that constitution, Louisiana was divided into four judicial districts. *Constitution of the State of Louisiana,* adopted July 31, 1852, Title IV, Art. 64. Although the Constitution provided for an office of Attorney-General, and for four District Attorneys, Title IV, Art. 83, the Constitution did not give the Attorney General <u>any</u> authority over the District Attorneys, who were elected only by the voters in their district. *Id.*

In addition, under Title VI, "General Provisions," Art. 96, "district or parish" officers were required to reside "within their district or parishes, and shall keep their offices at such places there as may be required by law." This distinguished them from "civil officers for the State at large,"

who were merely required to reside within the State.  Put another way, the Constitution's clear intention was to treat District Attorneys as <u>local</u> officials, not as agents of the State.  That is still the case today.

### b.  *Designation of district attorneys as local government officials*

The Supreme Court in *McMillian* further emphasized the importance of considering the public official's "designation" within state law provisions.[31]  Under Louisiana law, the framers of the Louisiana Constitution (1974) made clear that district attorneys are to be considered local officials, twice designating them as "parish official[s]" in Section 5, and Section 7 of Article VI, the article addressing "Local Government."[32]

The Defendant, however, points to the fact that district attorneys are discussed within Article V, entitled "Judicial Branch", as proof that the Constitution "unambiguously recognizes district attorneys as state government officials and vests them with power to act on behalf of the State of Louisiana."[33] This assertion is erroneous on both accounts.

First, the fact that district attorneys are discussed in a subsection under Article V, entitled "the Judicial Branch"[34], does not thereby "vest[ ] them with power to act on behalf of the state." To the contrary; Article V, Section 1 specifies that "[t]he judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." That district attorneys are omitted from this list is significant: "[t]he settled doctrine of statutory construction, *expressio unius est exclusio alterius*, dictates that when the legislature specifically enumerates a

---

[31] *See McMillian*, 520 U.S. at 787.

[32] *See* La. Const. Art. VI, § 5 ; La. Const. Art. VI, § 7; *see also* Opinion Number 89-210(A), La. Atty. Gen. Op. No. 1989-210, 1989 La.AG LEXIS 390 at *14 ("Art. VI of the Louisiana Constitution twice designated the district attorney…as 'parish officials'").

[33] Motion to Dismiss at p. 9.

[34] Indeed, Article V also discusses coroners, jurors and grand jurors– none of whom would be considered "vested" with state power of the judicial branch.

series of things, the legislature's omission of other items, which could have easily been included in the statute, is deemed intentional."[35] In short, contrary to Defendant's assertion, the framers intentionally refrained from vesting district attorneys with Article V powers.

Defendant's reliance on the reasoning in *Diaz v. Allstate Ins. Co.*[36] in support of this argument is also seriously misplaced. As the *Burge* Court noted, in *Diaz* "the Louisiana Supreme Court produced a fractured decision without a majority rationale."[37] Moreover, whatever authority *Diaz* might have once provided has since been nullified. As detailed below, the Louisiana Legislature overruled *Diaz* through the enactment of multiple statutory provisions, making clear that, as a matter of law, "[t]he District Attorney's Office is not the State and the State is not liable for the acts of the District Attorney or his employees."[38]

As to Defendant's second assertion, the fact that district attorneys are discussed in Article V does not thereby make them "state" government officials. It makes them "public officials," but it does not necessarily follow that they are "state officials." The Louisiana Legislature has codified this distinction: "[w]hile all offices created by the constitution…are 'public offices', they are not all 'state offices,' as they include parish offices, municipal offices, district offices, and offices of political subdivisions."[39] As to which classification district attorneys fall under, the Louisiana Legislature has repeatedly designated district attorneys as local – rather than state – officials: La. R.S. §§ 42:62(9), 42:1441.3, and 42:1102 (2)(a)(vi) all refer to "district attorneys" as being "separate political subdivisions", a term statutorily defined as being a "unit of local government."

---

[35] *Jackson v. City of New Orleans*, 2012-2742 n.8 (La. 01/28/14); 144 So. 3d 876, 888
[36] 433 So. 2d 699, 701 (La. 1983).
[37] *Burge*, 187 F.3d 452, 469 n.8.
[38] *Gibson v. State*, 94-0476 (La. App. 4 Cir. 10/27/94); 644 So.2d 1148, 1150 (citing La. R.S. § 42:1441(A)); *see also* 1989 La. AG LEXIS 390, *9 (noting that the "legislature overruled <u>Diaz's</u> ruling").
[39] La. R.S. § 42:1441.3 (emphasis added).

In short, Louisiana's Constitution and legislative provisions demonstrate clear legislative intent to designate district attorney's as local officials.

### c.   The State of Louisiana is not liable for district attorneys' official acts

The *McMillian* Court's analysis also emphasized the fact that "tort claims brought against sheriffs based on their official acts…constitute suits against the State" as being "strong evidence in favor of the…conclusion that sheriffs act on behalf of the State…when acting in their law enforcement capacity."[40]

Consideration of Louisiana law compels the opposite conclusion. Under La. R.S. § 42:1441, "[t]he state of Louisiana shall not be liable for any damage caused by a district attorney…within the course and scope of his official duties."[41] Additionally,  Louisiana Revised Statute § 1441.2, entitled "Nonimposition of master-servant liability on state by Civil Code Article 2320 and other laws for torts of <u>parish officials</u>," provides that:

> Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi offenses of his servant shall not extend or apply to and shall not impose liability upon the state for the offenses and quasi offenses of any of **those public officers named in Article V, Sections 26**, 27, 28, and 29, and Article VII, Section 24, of the Constitution of Louisiana or any of their officers, deputies, assistants, employees, appointees, designees, or representatives.[42]

Importantly, Article V, Section 26 covers "[d]istrict attorneys." Additionally, La. R.S. § 13:5108.1, which describes "covered individuals" for whom the State can be held liable when they commit a tort in the service of a state function, expressly commands that district attorneys are not to be considered "covered individuals.""[43]

---

[40] *McMillian*, 520 U.S. at 789.
[41] La. R.S. § 421441(A);
[42] La. R.S. § 421441.2
[43] La. R.S. § 13:5108.1 (3)(b).

Tellingly, the enactment and amendment of these statutory provisions were the Louisiana Legislature's direct response to Louisiana Supreme Court decisions like *Diaz v. Allstate Ins. Co.*[44], which determined the State should be held liable for the official acts of district attorneys.[45]

In short, by codifying the fact that the State of Louisiana is not liable for the torts of district attorneys, the state legislature has made clear its designation of district attorneys as local "parish officials" – not state officials – when acting in an official capacity.

### d.   District attorneys are "virtually autonomous" and independent local officials

In *McMillian* the Court emphasized that in Alabama state-level officers–the governor, the attorney general, and state court judges–exerted direct control over the sheriff, which the Court found indicated that the sheriff represented state rather than the local government when performing his law enforcement function.[46] Specifically, the Court noted that sheriffs "must obey" the orders and directives "of any state court, even those outside his county"[47], emphasizing that "judges (who are state officers…) may order the sheriff to take certain actions even if the judge sits in a distant county." [48] And "most importantly," as the Court emphasized, the governor and the attorney general have "direct control over how the sheriff fulfills his law enforcement duty…[T]hey can direct the sheriff to investigate any alleged violation of law in their counties. And after proceeding promptly to complete this investigation, the sheriff must promptly write a report to the state official

---

[44] *Diaz v. Allstate Ins. Co.*, 433 So.2d 699 (La. 1983).
[45] *See*, *e.g.,* 1989 La. AG LEXIS 390, *9 ("[t]he legislature overruled *Diaz*'s ruling that district attorneys and their employees were state employees by 1984 La. Acts No. 923, which amended R.S. 13:5108.2"); La. R.S. R.S. § 42:1441.4 (3) (discussing the legislature's "intent and purpose" of provisions, such as R.S. §§ 42:1441 and 42:1441.2, were to restore the "true legislatively intended meaning" to provisions regarding master-servant liability).
[46] *See McMillian*, 520 U.S. at 788-91.
[47] *Id.*, 520 U.S. at  789-90 (1997) (internal marks omitted).
[48] *Id.* at 789-90.

in charge of the investigation."[49] The Court then contrasted the state officers' ability to control the actions of sheriffs with the inability of local officials to do so.[50]

Louisiana's district attorneys, however, enjoy practically unfettered autonomy in performing their duties; they are not subject to the control of any state-level officers. Under Louisiana's Constitution, district attorneys are given charge of every criminal prosecution in their district.[51] In their <u>sole discretion</u>, the district attorney determines: what evidence to present to the grand jury;[52] whether to prosecute, regardless of the grand jury's determination;[53] which charges to bring;[54] and whether to dismiss an indictment, or a count therein.[55] As the Louisiana Supreme Court has emphasized:

> The district attorney **has entire charge and control** of every criminal prosecution instituted or pending in his district and determines whom, when and how he shall prosecute. La. C.Cr.P. art. 61; *State v. Collins*, 242 La. 704, 138 So.2d 546 (1962); *State v. Jourdain*, 225 La. 1030, 74 So.2d 203 (1954). The district attorney is given **absolute discretion** in the institution of criminal charges…there is **no provision of law that defines or limits the type of cases a district attorney may prosecute**….[56]

In short, the Louisiana Constitution, the Louisiana Legislature, and the Louisiana Supreme Court have made clear that a district attorney is considered a "virtually autonomous local government official" whose office constitutes "an independent local government entity."[57]

---

[49] *Id.* at 790-91 (internal marks omitted).

[50] *Id.*

[51] La. Const. Art. V, § 26.

[52] *See* La. C.Cr.P. Art. 442.

[53] La. C.Cr.P. Art. 384.

[54] *See* La R.S. § 14:4; La. R.S. § 16:1 (C).

[55] *See* La. C.Cr.P. Art 691.

[56] State v. Perez, 464 So.2d 737, 744 (La. 1985).

[57] *Burge*, 187 F.3d at 469-70.

The Defendant, however, points to the Constitutional provision referencing the Attorney General's ability to "supersede" a district attorney,[58] presumably as evidencing state-level control over the district attorney. Defendant's contention is wrong in two regards.

First, this provision only authorizes the attorney general to act in the place of the district attorney; it does not authorize the attorney general to actually "control" a district attorney in the performance of their duties. But more importantly, the provision's legislative history shows it was intended to give the district attorney greater autonomy and independence than previously enjoyed.

Between 1921 and 1974, the attorney general enjoyed "plenary" authority "to institute, prosecute, or intervene in a criminal proceeding."[59] The Louisiana Constitutional Convention of 1974, however, marked "a broad change in the philosophy of local government as formerly expressed by the 1921 document," where "[r]ather than granting local governmental subdivisions only such powers as were expressly granted them by the constitution or the legislature, the new [1974] constitution grants [local governments] broad residual powers."[60]

District attorneys were no exception. As the Louisiana Supreme Court has noted, the "broad powers constitutionally granted to the district attorney" were "expanded even further by the Constitution of 1974."[61] But at the same time that it expanded the district attorney's authority, "[t]the Louisiana Constitution of 1974 limit[ed] the attorney general's authority."[62]

This is highlighted by Article V, Section 8 of the 1974 Constitution, "the purpose" of which, "as the as the transcript of the constitutional convention proceedings reveal, was the curtailment of the attorney general's theretofore untrammeled authority to institute, prosecute, or

---

[58] Motion to Dismiss at p. 10 (citing LA. CONST. Art. 4, § 8).
[59] *See State v. Neyrey*, 341 So.2d 319, 324 (La. 1976) (citing LA. CONST. Art. VII, § 56 ).
[60] *Shreveport v. Kaufman*, 353 So.2d 995, 997 (La. 1977).
[61] *Bd. of Comm'rs v. Connick*, 94-3161 n.6 (La. 03/09/95); 654 So.2d 1073, 1077.
[62] *Neyrey*, 341 So.2d at 324.

intervene in a criminal case."[63] Under the new provision, the attorney general was authorized only to "advise and assist" in a particular prosecution "upon the written request of a district attorney."[64] And absent the district attorney's express written request, the attorney general may "supersede" in a prosecution only upon establishing "cause" to do so, and only after the court authorizes the supersession.[65]

> Legal scholars have noted that:
>
> The power to institute criminal proceedings is now exclusively that of the district attorneys, subject only to supercession by the attorney general, which can be done only with court authorization. **The Constitution of 1974 resolved the jurisdictional conflict between state and local authority by weighing the scales heavily in favor of the local authority** subject to the check and balance of the attorney general's power to supersede for cause.[66]

Finally, another aspect of control identified in *McMillian* was the source of funding for the official in question, including both their salary[67] and payment of expenses.[68] The Court emphasized the fact that the local Alabama county, "lacked discretion to deny the sheriff operational funds below what was reasonably necessary" and therefore, could not wield financial pressure on the official. Conversely, under Louisiana law, it is the local government that is afforded greater discretion in denying or granting the district attorney's requests for funding.

---

[63] *Id*, at 323-24
[64] La. Const. Art. IV, § 8.
[65] *Id.*
[66] Charles J. Yeager, *The Power of the Attorney General to Supercede a District Attorney: Substance*, Procedure & Ethics., 51 La. L. Rev. 733, 734 (1991).
[67] *McMillian*, 520 U.S. at 791.
[68] *Id.* at 791.

While the district attorney's budget is comprised of contributions from both the state and local government,[69] local government has historically provided the bulk of the funding.[70] Moreover, the local government – more so than the State – enjoys more discretion in the amount of funding to provide to the district attorney's office. The State is legislatively restricted from reducing the district attorney's salary and benefits during his term in office.[71] The district attorney's budget, on the other hand, is proposed by the New Orleans Mayor, and "must be approved by the City Council of New Orleans"[72] on an annual basis. Accordingly, while the State cannot exert immediate influence on the district attorney's practices or policies, the local government is well-equipped to do so.

---

[69] "The operations of the DA's Office are highly reliant upon appropriations from the City of New Orleans and from the State of Louisiana." Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2014 and 2013, June 30, 2015, at 11,
https://app.lla.state.la.us/PublicReports.nsf/AA6CFA5C0DC02C6386257EA4006A87A0/$FILE/0000995B.pdf.

[70] For instance, "[d]uring 2014 and 2013, the District Attorney has recognized $3,750,730 and $3,740,335, respectively, from the State for On-Behalf Payments" and "the District Attorney has recognized $6,271,671 and $6,271,671 during 2014 and 2013, respectively, for appropriations from the City of New Orleans." Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2014 and 2013, June 30, 2015, at 36 (see also 18),
https://app.lla.state.la.us/PublicReports.nsf/AA6CFA5C0DC02C6386257EA4006A87A0/$FILE/0000995B.pdf. In 2020, the state contributed $4,077,736 in On-Behalf Payments to OPDA and $154,679 towards pensions for OPDA staff; the City contributed $7,178,029 in appropriations. Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2020, Oct 29, 2021, at 47 (see also at 18),
https://app.lla.la.gov/publicreports.nsf/0/637e6ff889cffe35862587880070e359/$file/00024f16.pdf.

[71] See La. Const. Art. 5 § 31 ("Reduction of Salaries and Benefits Prohibited - Section 31: The salary and retirement benefits of an attorney general, district attorney, sheriff, coroner, or clerk of the district court shall not be diminished
during his term of office.").

[72] Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2014 and 2013, June 30, 2015, at 27,
https://app.lla.state.la.us/PublicReports.nsf/AA6CFA5C0DC02C6386257EA4006A87A0/$FILE/0000995B.pdf.

One relatively recent example of such influence occurred in response to former Orleans District Attorney Leon Cannizzaro's practice of issuing fake subpoenas to compel witnesses to testify. Following revelation of the practice, the City Council cut the district attorney's budget and Cannizzaro promptly ceased the controversial practice.[73]

In short, under Louisiana law, a district attorney enjoys virtually unhindered independence and autonomy in performing their official duties. And to the extent that influence and control is exerted on the office, it is done so by local government officials – not State officials. Consideration of the amount of control exerted – or not – on the district attorney by the various levels of government make clear that a Louisiana district attorney is a "virtually autonomous local government official" whose office constitutes "an independent local government entity."[74]

**5.  *District attorneys are locally autonomous in implementing and conducting inter-office training and supervision***

Finally, it should be noted that Defendant's argument focuses solely on whether District Attorney Connick was acting as a state official when making any decisions and policies concerning the disclosure of evidence to the defense.[75] Defendant fails to meaningfully address the alternative basis of liability in Reeder's complaint: District Attorney Connick's failure to train and supervise the assistant district attorneys concerning their *Brady* obligations. Although there should be no question that a district attorney is a local official when acting in an inherently administrative role in implementing and conducting intra-office trainings and supervisions, the Court need not address

---

[73] "The day The Lens reported on the [improper subpoena] practice, Cannizzaro's office announced it would stop . . . . Part of this year's budget cut was a check on Cannizzaro's practices." Charles Maldonado, *Cannizzaro receives lashing from city council for fake subpoenas, jailing witnesses and other hardball tactics*, THE LENS, Sep. 20, 2017, https://thelensnola.org/2017/09/20/cannizzaro-receives-lashing-from-city-council-for-fake-subpoenas-jailing-witnesses-and-other-hardball-tactics/.

[74] *Burge*, 187 F.3d at 469-70.

[75] Motion to Dismiss at p. 9.

it; because the Defendant has failed to meaningfully brief the issue.  Accordingly, it is considered waived.

## CONCLUSION

Wherefore, for the foregoing reasons, Defendant Jason Williams's Motion to Dismiss must be dismissed and Mr. Reeder's action permitted to proceed.


Dated: February 20, 2023.


Respectfully submitted,


*/s/Kelly P. Mitchell*_____
Herbert V. Larson, Jr. (La. Bar No. 8052)
Kelly P. Mitchell (La. Bar No. 37807)
LARSON & MITCHELL
ATTORNEYS AT LAW
700 Camp Street
New Orleans, LA 70130
(504) 528-9500
hvl@landmlaw.com
kpm@landmlaw.com

Attorneys for Kuantay Reeder