UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KUANTAY REEDER | CIVIL ACTION |
| VERSUS | NO: 22-4614 |
| JASON WILLIAMS,<br>*in his official capacity as Orleans*<br>*Parish District Attorney* | SECTION: "A" (1) |

### ORDER AND REASONS

The following motion is before the Court: **Motion for Partial Summary Judgment (Rec. Doc. 31)** filed by the plaintiff, Kuantay Reeder. The defendant, Jason R. Williams, in his official capacity as Orleans Parish District Attorney, opposes the motion. The motion, submitted for consideration on November 8, 2023, is before the Court on the briefs without oral argument.[1]

### I. Background

In 1995, Kuantay Reeder, the plaintiff herein, was prosecuted by Orleans Parish District Attorney Harry Connick, and convicted (following a prior mistrial based on a hung jury) of second-degree murder in connection with the death of Mark Broxton. Earl Price was the State's sole testifying eyewitness. Reeder was sentenced to life imprisonment.

Reeder's conviction was affirmed on appeal but Reeder continued to challenge

---

[1] Mr. Reeder has requested oral argument but the Court is not persuaded that oral argument is necessary in light of the excellent briefing submitted by both parties.

the validity of his conviction through post-conviction proceedings. In 2009, Reeder's post-conviction counsel discovered that Earl Price had a prior criminal conviction and that the Orleans Parish District Attorney's Office had withheld that information from Reeder when he was tried. Extensive litigation on this *Brady*[2] issue ensued in the following years but Reeder was denied relief in both the state and federal courts. *See, e.g., Reeder v. Vannoy*, 978 F.3d 272 (5th Cir. 2020). The various courts were persuaded that Price's undisclosed conviction was relatively minor when compared to Price's other several *disclosed* convictions and therefore cumulative; *Brady*'s materiality requirement was not met. *Id.* at 279.

Jason Williams, the current district attorney for Orleans Parish, took office in 2021 and instituted a Civil Rights Division in his organization for the purpose of redressing past harms and injustices that the Orleans Parish District Attorney's Office had caused to defendants under prior regimes. The staff set out to identify cases that involved State misconduct, particularly those involving wrongful convictions and extreme sentences. (Rec. Doc. 1, Complaint ¶ 59). The Civil Rights Division reviewed the prosecution's original file in Reeder's case, which revealed the existence of "significant exculpatory evidence" that had never been disclosed to Reeder or his counsel.[3] (*Id.* ¶ 60).

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation requires proof of three elements: (1) that the prosecution suppressed evidence, (2) that it was favorable to the defendant, and (3) that it was material. *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011) (citing *United States v. Skilling*, 554 F.3d 529, 574 (5th Cir. 2008)).

[3] Part of the impetus for the Civil Rights Division's review of Reeder's original case file was that Reeder had sought review with the United States Supreme Court of the Fifth Circuit's decision affirming the district court's rejection of his federal habeas petition. In connection with that pending writ application the Supreme Court had ordered a response from the

Specifically, during its review of the original criminal case file, the Civil Rights Division discovered two sets of handwritten notes, detailing that on two separate occasions Earl Price had notified prosecutors that he had identified alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. (*Id.* ¶¶ 63-65). In June 2021, Williams, through the Civil Rights Division of his office, produced the previously-withheld information to Reeder's attorney. (*Id.*). Even beyond withholding the potentially exculpatory material, Reeder contends that the prosecutors in 1995 knowingly misled the jury because at trial they portrayed Earl Price as unwavering in his identification of Reeder as the shooter. (*Id.* ¶ 68).

In August 2021, Reeder supplemented his state application for post-conviction relief with the newly-disclosed exculpatory evidence. In response, the Orleans Parish District Attorney's Office (hereinafter "OPDA") filed stipulations acknowledging *inter alia* that Reeder's conviction and incarceration were in violation of the Constitution. (*Id.* ¶ 98). At a hearing held on December 6, 2021, three remarkable things occurred: a state criminal judge vacated Reeder's conviction for second-degree murder, the OPDA immediately declined all charges against Reeder, and Reeder walked out of Angola Penitentiary after being incarcerated for over twenty-eight years. (*Id.* ¶ 100).

Following his release, Reeder filed this civil action against Jason Williams, in his official capacity, seeking to hold the OPDA liable pursuant to 42 U.S.C. § 1983 for the injuries and damages that Reeder suffered for being unconstitutionally deprived of his

---

Orleans Parish District Attorney.

freedom for more than half of his life (Mr. Reeder was 50 years old when he filed this lawsuit), that deprivation having been caused by violations of his rights guaranteed by *Brady v. Maryland, supra.* Reeder alleges that the OPDA violated his constitutional rights by withholding favorable evidence, that at all times relevant the OPDA maintained an unconstitutional policy with respect to the obligation to disclose favorable information to the defendants that it prosecuted, and that the OPDA failed to properly train and supervise its prosecutors with respect to *Brady* obligations.[4]

Although all of the tortious conduct alleged against the OPDA occurred well before Williams took office, as the current district attorney, Williams, in his official capacity, is the proper defendant for the § 1983 claim.

Williams responded to Reeder's complaint with a motion to dismiss grounded on the contention that the actions that form the basis of Reeder's claims are attributable to the State of Louisiana—which is not a "person" for purposes of § 1983—and not to the OPDA as an independent local government entity. On April 4, 2023, the Court denied that motion. (Rec. Doc. 25, Order and Reasons). Williams then answered the complaint and a jury trial was calendared for March 18, 2024. (Rec. Doc. 30, Scheduling Order). The Court recently vacated the prior scheduling order and trial date at the unopposed request of Reeder.[5] (Rec. Doc. 47, Order).

---

[4] Under *Brady*, a local government entity, including a district attorney's office, deprives a criminal defendant of his right to due process when it suppresses or withholds evidence that is both favorable to the defendant and material to his defense. *Truvia v. Connick*, 577 Fed. App'x 317, 321–22 (5th Cir. 2014) (citing *Smith v. Cain,* ⎯⎯ U.S. ⎯⎯, 132 S. Ct. 627, 630 (2012)).

[5] The Court directed the Case Manager for Section A to notice a telephone scheduling

Reeder now moves for partial summary judgment in his favor on the element of his claim under § 1983 that requires him to establish that he has been deprived of a right, privilege, or immunity secured by the United States Constitution. More specifically, Reeder moves for partial summary judgment on the claim that his *Brady* rights were violated because the OPDA failed to disclose (prior to his trial) the exculpatory information pertaining to Earl Price's identification of alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. As grounds for the motion, Reeder invokes the doctrine of res judicata (issue preclusion) based upon the stipulations that Williams's office filed in 2021 in response to Reeder's application for state post-conviction relief, and the judgment and findings of Judge Rhonda Goode-Douglas, the criminal court judge who relied on those stipulations when granting Reeder's motion to vacate his conviction at the December 6, 2021 hearing.

The parties' competing contentions are addressed below.

## II.    Discussion

The specific aspect of Reeder's § 1983 claim at issue in his motion is the claim that the OPDA violated Reeder's *Brady* rights when it failed to disclose to the defense Earl Price's prior identification of another person as the shooter of Mark Broxton (hereinafter referred to as "the *Brady* claim").[6] Relying on Williams's effusive, self-

---

conference after the Court issues its ruling on the instant motion.

[6] This specific *Brady* violation is the only one at issue in the current motion for partial summary judgment. Reeder contends that the OPDA committed other *Brady* violations during his prosecution but at this time Reeder is not seeking partial summary judgment as to those other violations.

flagellating stipulations, Judge Goode-Douglas found that the requirements for relief under *Brady* were satisfied, and it was on this basis that she vacated Reeder's conviction.[7] Those damning stipulations establish every element of Reeder's claim for a *Brady* violation against the OPDA—no credible suggestion can be made to the contrary.[8] The question before the Court today is whether the state court judgment finding a *Brady* violation should be given preclusive effect against Williams in this civil lawsuit or whether Williams is entitled to relitigate the merits of the *Brady* claim in defense of Reeder's § 1983 claim.

In support of his motion for partial summary judgment Reeder argues that all of the requirements necessary for the doctrine of res judicata (issue preclusion) to apply are met, and that Williams is not entitled to relitigate the merits of the *Brady* violation

---

[7] Judge Goode-Douglas made the following finding at the post-conviction hearing:

> Okay. So at this time the Court is going to find that the threshold has been met under *Brady versus Maryland*. The Court is going to find that the failure to disclose the exculpatory information that Mr. Price had possibly identified another suspect in the lineup is significant. And that information should have been turned over to the defense, so that they could prepare a proper cross examination of Mr. Price for Mr. Reeder's trial. So at this time the Court is going to grant Mr. Reeder's request to vacate his conviction . . . .

(Rec. Doc. 31-3, Transcript at 13). The Court has not seen the final judgment that vacated Reeder's conviction.

[8] The State's stipulations filed in response to Reeder's application for state post-conviction relief and in anticipation of the December 6, 2021 post-conviction hearing before Judge Goode-Douglas, comprise 15 pages and are far too detailed and lengthy to repeat here. Suffice it to say that the OPDA did not simply decline to oppose Reeder's post-conviction motion or simply join in Reeder's motion but rather chose to enter an affirmative confession of error that likely exceeded what was necessary to convince Judge Goode-Douglas that Reeder was entitled to post-conviction relief.

underlying the state court judgment vacating his conviction.

In opposition to the motion Williams not only disputes that the requirements for res judicata are satisfied, he now takes the position that Reeder's constitutional rights under *Brady* weren't violated at all. Williams's current position is that even assuming that Price made those statements to prosecutors (regarding alternate suspect Berzeracque "Byrd" Johnson), and further assuming that those statements were not disclosed to the defense prior to trial, the statements are not material for purposes of *Brady*, there was other corroborating evidence of guilt, and therefore no *Brady* violation occurred. Williams contends that he should be given the opportunity to defend the case on the merits by proving that Reeder's constitutional rights were not in fact violated.

In deciding the preclusive effect of a state court judgment in federal court, the court applies the law of the state that rendered the judgment. *In re Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996) (citing *Marrese v. Am. Academy of Ortho. Surgeons*, 470 U.S. 373, 380 (1985)). Louisiana law therefore governs the preclusive effect that Judge Goode-Douglas's judgment vacating Reeder's conviction will have in this federal civil litigation—on this point the parties concur.

Louisiana's res judicata statute provides in relevant part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent . . . [a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

La. R. S. § 13:4231(3).[9]

Three requirements for issue preclusion derive from the statute: (1) a valid and final judgment; (2) identity of the parties; and (3) an issue that has been actually litigated and determined if its determination was essential to the prior judgment. *Horrell v. Horrell*, 808 So. 2d 363, 373 (La. App. 1st Cir. 2000). The party who urges res judicata bears the burden of proving its essential elements by a preponderance of the evidence. *Kimball v. Kamenitz*, 331 So. 3d 474, 488 (La. App. 4th Cir. 2021) (citing *Guidry v. One Source Facility Servs.,* 901 So. 2d 626, 628 (La. App. 4th Cir. 2005)).

Williams does not dispute the validity and finality of the state judgment vacating Reeder's conviction. But Williams does dispute whether the state criminal case (which included the post-conviction proceedings) and this civil lawsuit are between the same parties; in other words, Williams argues that the "identity of the parties" requirement for res judicata is not met. And even though it cannot be disputed that the *Brady* violation was determined by Judge Goode-Douglas and essential to her judgment, Williams contends that the third requirement for res judicata is not satisfied because the *Brady* violation was not "actually litigated," the matter having been uncontested.

This civil lawsuit and the state criminal case, including the state post-conviction

---

[9] The statute embraces the broad usage of the phrase "res judicata" to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel). *Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp.*, 880 So. 2d 129, 136 (La. App. 1st Cir. 2004). Thus, res judicata used in the broad sense has two different aspects: (1) foreclosure of relitigating matters that have never been litigated but should have been advanced in the earlier suit; and (2) foreclosure of relitigating matters that have been previously litigated and decided. *Id.* (citing *Hudson v. City of Bossier,* 766 So. 2d 738, 743 (La. App. 2nd Cir. 2000)). The portion of La. R.S. § 13:4231 quoted above pertains to issue preclusion or collateral estoppel, which is the type of res judicata implicated in this case.

proceedings, are not between the same parties. Williams, in his official capacity, is the defendant in this civil action. But Williams was not a party to the state proceedings in his official capacity or otherwise. Williams, through his assistant district attorney(s), served as counsel for the State of Louisiana and/or the warden with physical custody of Reeder, which is not the same as being a "party" to the case.[10] For res judicata to apply Louisiana law does not require that the parties must be the same physical or material parties but they must appear in the suit in the same quality or capacity. *Bandaries v. Cassidy*, 86 So. 3d 125, 129-30 (La. App. 3d Cir. 2012) (citing *Morris v. Haas*, 659 So. 2d 804, 810 (La. App. 5th Cir. 1995)); *Burguieres v. Pollingue*, 843 So. 2d 1049, 1054 (La. 2003). Given that Williams participated in the state post-conviction proceeding in a representative capacity on behalf of the state, and given that he appears in this lawsuit as a party defendant, he is not appearing in both cases in same quality or capacity.

Reeder acknowledges that Williams was not a party to the state criminal case but Reeder insists that the identity of the parties requirement for res judicata is satisfied nonetheless because Williams and the state were in privity during the course of the state criminal case. Louisiana law recognizes that identity of parties can be satisfied when a privy of one of the parties is involved in the prior litigation. *Burguieres*, 843 So.

---

[10] In Louisiana, the district attorney has charge of every criminal prosecution *by the State* in his district, and he serves as *the representative of the State* before the grand jury in his district. La. Const. art. V, § 26(B); *see also* La. Code Crim. Pro. arts. 61, 64. During the post-conviction phase of a criminal case the custodian of the defendant, *i.e.*, the warden, must answer an application for relief but he does so through the district attorney in the parish in which the defendant was convicted. La. Code Crim. Pro. art. 927(A), (B). Whether Williams was nominally representing the state or the warden during the 2021 post-conviction proceedings is not material to any issue currently before the Court.

2d at 1054 n.3 (citing *Welch v. Crown Zellerbach Corp.*, 359 So. 2d 154, 156 (La. 1978)). The preclusive effect of a judgment binds nonparties who are deemed "privies" of the parties in three limited circumstances: 1) the nonparty is a successor in interest of a party; 2) the nonparty controlled the prior litigation; or 3) the nonparty's interests were adequately represented by a party to the action who may be considered the "virtual representative" of the nonparty because the interests of the party and the nonparty are so closely aligned. *Davisson v. Davisson*, 248 So. 3d 633, 638 (La. App. 2d Cir. 2018) (citing *Forum for Equal. PAC v. McKeithen*, 893 So. 2d 738 (La. 2005); *Gilbert v. Visone*, 708 So. 2d 496 (La. App. 2d Cir. 1998)). The concepts of control and virtual representation are narrowly construed and are not satisfied merely by showing that the party and the nonparty have common or parallel interests in the factual and legal issues presented in the respective actions. *Hudson v. City of Bossier*, 766 So. 2d 738, 743–44 (La. App. 2d Cir. 2000) (citing *Gilbert*, 708 So. 2d at 496).

Reeder contends that Williams not only controlled the prior litigation (the post-conviction proceedings) but in addition Williams' interests were adequately represented in the prior litigation because the state's interests and those of Williams were closely aligned. According to Reeder, the prosecutor who sought and secured the challenged conviction is really the opposing party in a criminal case. In support of his position, Reeder directs the Court's attention to *Jones v. Cannizzaro*, No. 18-503, 2019 WL 2289470 (E.D. La. May 28, 2019), decided by Judge Milazzo, and *Johnson v. Bogalusa City*, No. 10-3444, 2013 WL 4508058 (E.D. La. Aug. 22, 2013), decided by Judge Morgan. In both cases the presiding judge concluded that the requirements for nonparty

issue preclusion were satisfied vis à vis the district attorney who had unsuccessfully litigated a *Brady* issue in the state courts. Reeder contends that the same result reached in *Jones* and *Johnson* should apply to his case.

Clearly Williams controlled the 2021 post-conviction litigation in state court because as the sitting district attorney in Orleans Parish that is what state law required him to do. Williams is not similarly situated to the nonparty attorney in the *Davisson* decision cited by Reeder, that attorney having engaged in untoward, surreptitious manipulation of a prior case in order to serve his personal interests. 248 So. 3d at 638. While the three-element standard for nonparty preclusion is intended to be disjunctive, the Court is not persuaded that the control that Williams exercised while discharging his lawful duties as the representative of the state is enough *by itself* to subject him to issue preclusion in this federal matter. In fact, neither *Jones* nor *Johnson* turned on the issue of control alone because in both of those cases the decision of the district judge was buttressed by the fact that the district attorneys' interests in the prior criminal case were adequately represented because they were completely aligned with the interests of the state/warden.[11]  In *Jones* and *Johnson* this was true because the district attorneys had contested and opposed the *Brady* issue to adverse finality in the state court system. Simply, it would have made no sense in either *Jones* or *Johnson* to allow the district attorneys to escape the effects of res judicata by relitigating everything all over again in

---

[11] The Court notes that in the *Davisson* decision cited by Reeder the court found that in addition to control the non-party also had his interests adequately represented in the prior litigation. 248 So. 3d at 639. In other words, the decision did not turn on the control element alone.

a federal § 1983 civil lawsuit.

But Williams did not contest the *Brady* claim that ultimately led to Reeder's meritorious motion to vacate his conviction. Rather, Williams confessed error in order to help cure what he determined to be an injustice. In Louisiana, state law gives a prosecutor absolute discretion to not oppose or even to join an application for post-conviction relief that raises a cognizable claim, and the Louisiana Supreme Court has recognized that this broad authority is necessary because a prosecutor's responsibility is as "a minister of justice and not simply that of an advocate." *State v. Lee*, 370 So. 3d 408, 416 (La. 2023) (quoting Model Rules of Prof. Conduct R. 3.8 cmt. [1] (Am. Bar Ass'n 1983); *State v. Tate*, 171 So. 108, 112 (La. 1936) (noting that the district attorney, as representative of the state, "seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes").

When Williams exercised his discretion to not oppose and to join in Reeder's application for post-conviction relief, he potentially exposed his office to civil liability based on conduct committed by state actors that he did not control, who acted pursuant to decades-old policies that he did not enact or condone. Williams sought justice for Reeder and he did so at the risk of his own office's coffers, the protection of which would have better served his own interests. Under the circumstances of this case, and in contrast to what occurred in both *Jones* and *Johnson*, the Court simply cannot conclude that Williams's interests were adequately represented in the prior criminal case. The Court therefore denies the motion for partial summary judgment insofar as

Reeder seeks to rely on nonparty res judicata to relive him of his burden of proof in this § 1983 case.

Finally, Reeder argues that even if res judicata does not apply, Williams should be bound by the *factual* stipulations entered on behalf of the state in the criminal case. Reeder relies on an aspect of Louisiana law that holds that judicial admissions may be binding on a party in subsequent proceedings where the other party has been deceived by the admission and relied or acted on it to his prejudice. *See, e.g., Bennett v. Porter*, 58 So. 3d 663, 669 (La. App. 3d Cir. 2011) (citing *Marchand v. Asbestos Defendants,* 52 So. 3d 196 (La. App. 4th Cir. 2010)).

Reeder's argument, which Williams characterizes as nonsensical, is that he has suffered prejudice because his post-conviction counsel elected to forego introducing additional evidence or testimony at the December 6, 2021 hearing because of the State's stipulations filed by Williams's office.

Reeder has suffered no prejudice attributable to the State's stipulations filed in his post-conviction case. Reeder is not precluded from introducing in this case (assuming admissibility of course) whatever evidence he would have produced in the state criminal case had he been held to his burden of proof. As Williams points out, not only did Reeder sustain no prejudice based on the State's stipulations but those stipulations "established a quick path to freedom" by relieving Reeder of the difficult and often lengthy process of adversarial post-conviction litigation.

In sum, the state court judgment finding a *Brady* violation will not be given preclusive effect against Williams in this civil lawsuit. Williams is not precluded from

relitigating the merits of the *Brady* claim in defense of Reeder's § 1983 claim.[12]

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 31)** filed by the plaintiff, Kuantay Reeder, is **DENIED**.

December 6, 2023

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[12] The Court does not intend to foreclose the possibility that the State's stipulations may have some role in this matter although the Court expresses no opinion at this time as to what that role might be. Further, in addition to the State's stipulations, an assistant district attorney employed by Williams's office appeared at the December 6, 2021 hearing and persuasively argued to Judge Goode-Douglas on Reeder's behalf everything that Williams now seeks to dispute in this civil lawsuit. When an officer of the court advises a presiding judge at a hearing of *facts* intended to move the judge toward a certain outcome, facts such as that potentially exculpatory evidence in a criminal case was located in *his* files and that the evidence was *not* produced prior to the defendant's trial, one would assume that he is giving the judge accurate and truthful information.