UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KUANTAY REEDER             CIVIL ACTION

VERSUS             NO: 22-4614

JASON WILLIAMS,             SECTION: "A" (1)
*in his official capacity as Orleans Parish District Attorney*

## ORDER AND REASONS

The following motion is before the Court: **Motion in Limine to (1) Preclude Re-Litigation of OPDA *Brady* Violations Recognized in Federal Court Rulings, and (2) Admit Court Rulings Recognizing OPDA *Brady* Violations (Rec. Doc. 69)** filed by the plaintiff, Kuantay Reeder. The defendant, Jason R. Williams, in his official capacity as Orleans Parish District Attorney, opposes the motion. The motion, submitted for consideration on December 11, 2024, is before the Court on the briefs without oral argument.[1]

### I. Background

In this action brought under 42 U.S.C. § 1983, Kuantay Reeder seeks damages as a result of the violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by the Orleans Parish District Attorney's Office ("OPDA") in conjunction with his prosecution and conviction for murder in the 1990s. Although all of the tortious conduct alleged against the OPDA occurred well before Jason Williams took office, as the

---

[1] Mr. Reeder has requested oral argument but the Court is not persuaded that oral argument is necessary in light of the excellent briefing submitted by both parties.

current district attorney, Williams, in his official capacity, is the proper defendant for the § 1983 claim.

In 1995, Kuantay Reeder, the plaintiff herein, was prosecuted by Orleans Parish District Attorney Harry Connick, and convicted (following a prior mistrial based on a hung jury) of second-degree murder in connection with the death of Mark Broxton. Earl Price was the State's sole testifying eyewitness. Reeder was sentenced to life imprisonment.

Reeder's conviction was affirmed on appeal but Reeder continued to challenge the validity of his conviction through post-conviction proceedings. In 2009, Reeder's post-conviction counsel discovered that Earl Price had a prior criminal conviction and that the OPDA had withheld that information from Reeder when he was tried. Extensive litigation on this *Brady*[2] issue ensued in the following years but Reeder was denied relief in both the state and federal courts. *See, e.g., Reeder v. Vannoy*, 978 F.3d 272 (5th Cir. 2020). The various courts were persuaded that Price's undisclosed conviction was relatively minor when compared to Price's other several *disclosed* convictions and therefore cumulative; *Brady*'s materiality requirement was not met. *Id.* at 279.

Jason Williams, the current district attorney for Orleans Parish, took office in 2021 and instituted a Civil Rights Division in his organization for the purpose of redressing past harms and injustices that the OPDA had caused to defendants under prior regimes. The staff set out to identify cases that involved State misconduct, particularly those

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation requires proof of three elements: (1) that the prosecution suppressed evidence, (2) that it was favorable to the defendant, and (3) that it was material. *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011) (citing *United States v. Skilling*, 554 F.3d 529, 574 (5th Cir. 2008)).

involving wrongful convictions and extreme sentences. (Rec. Doc. 1, Complaint ¶ 59). The Civil Rights Division reviewed the prosecution's original file in Reeder's case, which revealed the existence of "significant exculpatory evidence" that had never been disclosed to Reeder or his counsel.[3] (*Id.* ¶ 60). Specifically, during its review of the original criminal case file, the Civil Rights Division discovered two sets of handwritten notes, detailing that on two separate occasions Earl Price had notified prosecutors that he had identified alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. (*Id.* ¶¶ 63-65). In June 2021, Williams, through the Civil Rights Division of his office, produced the previously-withheld information to Reeder's attorney. (*Id.*). Even beyond withholding the potentially exculpatory material, Reeder contends that the prosecutors in 1995 knowingly misled the jury because at trial they portrayed Earl Price as unwavering in his identification of Reeder as the shooter. (*Id.* ¶ 68).

In August 2021, Reeder supplemented his state application for post-conviction relief with the newly-disclosed exculpatory evidence. In response, the OPDA filed stipulations acknowledging *inter alia* that Reeder's conviction and incarceration were in violation of the Constitution. (*Id.* ¶ 98). At a hearing held on December 6, 2021, three remarkable things occurred: a state criminal judge vacated Reeder's conviction for second-degree murder, the OPDA immediately declined all charges against Reeder, and Reeder walked out of Angola Penitentiary after being incarcerated for over twenty-eight years. (*Id.* ¶ 100).

---

[3] Part of the impetus for the Civil Rights Division's review of Reeder's original case file was that Reeder had sought review with the United States Supreme Court of the Fifth Circuit's decision affirming the district court's rejection of his federal habeas petition. In connection with that pending writ application the Supreme Court had ordered a response from the Orleans Parish District Attorney.

Following his release, Reeder filed this civil action against Jason Williams, in his official capacity, seeking to hold the OPDA liable pursuant to 42 U.S.C. § 1983 for the injuries and damages that Reeder suffered for being unconstitutionally deprived of his freedom for more than half of his life (Mr. Reeder was 50 years old when he filed this lawsuit), that deprivation having been caused by violations of his rights guaranteed by *Brady v. Maryland, supra*. Reeder alleges that the OPDA violated his constitutional rights by withholding favorable evidence, that at all times relevant the OPDA maintained an unconstitutional policy with respect to the obligation to disclose favorable information to the defendants that it prosecuted, and that the OPDA failed to properly train and supervise its prosecutors with respect to *Brady* obligations.

Williams responded to Reeder's complaint with a motion to dismiss grounded on the contention that the actions that form the basis of Reeder's claims are attributable to the State of Louisiana—which is not a "person" for purposes of § 1983—and not to the OPDA as an independent local government entity. On April 4, 2023, the Court denied that motion. (Rec. Doc. 25, Order and Reasons); *Reeder v. Williams*, No. 22-4614, 2023 WL 2771481 (E.D. La. Apr. 4, 2023). Williams then answered the complaint and a jury trial was calendared for March 18, 2024. (Rec. Doc. 30, Scheduling Order). The Court ultimately vacated the prior scheduling order and trial date at the unopposed request of Reeder. (Rec. Doc. 47, Order). The parties then selected December 2, 2024, as the new trial date. (Rec. Doc. 50, Scheduling Order).

Reeder moved for partial summary judgment in his favor on the element of his claim under § 1983 that requires him to establish that he has been deprived of a right, privilege, or immunity secured by the United States Constitution. (Rec. Doc. 31, Motion

for Partial Summary Judgment). More specifically, Reeder moved for partial summary judgment on the claim that his *Brady* rights were violated because the OPDA failed to disclose (prior to his trial) the exculpatory information pertaining to Earl Price's identification of alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. As grounds for the motion, Reeder invoked the doctrine of res judicata (issue preclusion) based upon the stipulations that Williams's office filed in 2021 in response to Reeder's application for state post-conviction relief, and the judgment and findings of Judge Rhonda Goode-Douglas, the criminal court judge who relied on those stipulations when granting Reeder's motion to vacate his conviction at the December 6, 2021 hearing. On December 6, 2023, the Court denied that motion for partial summary judgment insofar as Reeder sought to rely on nonparty res judicata to relieve him of his burden of proof in this § 1983 case (Rec. Doc. 48, Order and Reasons); *Reeder v. Williams*, No. 22-4614, 2023 WL 8449261 (E.D. La. Dec. 6, 2023).

On November 14, 2024, over Reeder's objection, the Court vacated the prior scheduling order and entered a new Case Management Order in light of the complexity of this case. (Rec. Doc. 78, Case Management Order). A jury trial has been scheduled for September 15, 2025. (*Id.*).

 II.     **Reeder's Motion in Limine**

To better appreciate the purpose and significance of the relief that Reeder is seeking via his motion in limine, a brief review of the jurisprudence governing a § 1983 claim against a district attorney's office based on a violation of *Brady* is appropriate.

Under *Brady*, a local government entity, including a district attorney's office, deprives a criminal defendant of his right to due process when it suppresses or

withholds evidence that is both favorable to the defendant and material to his defense. *Truvia v. Connick*, 577 Fed. App'x 317, 321–22 (5th Cir. 2014) (citing *Smith v. Cain,* ––– U.S. –––, 132 S. Ct. 627, 630 (2012)). Well-established law holds that local governmental entities (like a district attorney's office) are not susceptible to vicarious liability for the acts of their employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y. City Dep't Soc. Servs.*, 436 U.S. 658 (1978)). Instead, a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Id.* It is only when the execution of the entity's policy or custom causes the constitutional violation that the municipality may be liable under § 1983. *Id.* (citing *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). In other words, municipalities cause constitutional violations only through their policies and customs; the path to liability against a municipality under § 1983 necessarily begins with the search for a policy or custom.

In *Connick v. Thompson*, 563 U.S. 51, 61 (2011), the Supreme Court recognized that in limited circumstances, a local government's decision <u>not</u> to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983, although a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. A municipality's failure to train its employees in a relevant respect must amount to "'deliberate indifference' to the rights of persons with whom the [untrained employees] come into contact." *Id.* (quoting *City of Canton*, 489 U.S. at 388). Only then "can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *Id.* (quoting *City of Canton*, 489 U.S. at 389).

Importantly, failure to train prosecutors in their *Brady* obligations does not allow for single-incident liability. *Thompson*, 563 U.S. at 64. A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Id.* at 62 (citing *Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* (quoting *Bryan Cty.*, 520 U.S. at 407). Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Thompson*, 563 U.S. at 62.

Thus, to prevail on his *Brady* claim against Williams, Reeder must establish that the OPDA's violation of his *Brady* rights was the direct and proximate result of an OPDA policy, practice, or custom, *and at least insofar as the failure to train claim is concerned*, that the OPDA was deliberately indifferent to the known or obvious consequence that constitutional violations would result from its policy, practice, or custom not to train its prosecutors.[4] In order to meet that burden Reeder explains that he has marshalled

---

[4] To be clear, failure to train is but one manner in which a plaintiff like Reeder may establish that an official policy or custom of the government entity caused the violation of his constitutional rights, and Reeder's complaint is not limited solely to the failure to train. So for instance, another manner of establishing a municipal policy is proof of "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webb v. Town of St. Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc)). While deliberate indifference is an element of the failure to train claim against the OPDA as clarified by *Connick v. Thompson, supra*, *Thompson* dealt only with liability based on the failure to train prosecutors and not with any other manner of establishing liability against a district attorney's office.

substantial evidence responsive to this standard. Specifically, he has identified at least 44 cases, in addition to his own, in which federal and state courts concluded that the OPDA violated *Brady*. Reeder intends to offer these rulings as evidence of a pattern of *Brady* violations by OPDA supporting a finding that OPDA had a longstanding policy, practice, or custom of violating defendants' *Brady* rights and that OPDA policy makers were on notice of that policy, practice, or custom yet failed to act, demonstrating their deliberate indifference to the risk to defendants' *Brady* rights.

Via the instant motion Reeder seeks an in limine ruling that (1) the OPDA is precluded as a matter of law under the doctrine of collateral estoppel, from relitigating the 11 federal court rulings identified in Appendix A to his motion, in which federal courts found that the OPDA committed *Brady* violations; alternatively, that the rulings are admissible as proof of the *Brady* violations by OPDA, and (2) all of the court rulings listed in both appendices are admissible as exceptions to the Federal Rule of Evidence excluding hearsay, as proof of the *Brady* violations by the OPDA identified therein.

Reeder explains that if granted, this in limine ruling will significantly streamline the discovery and trial proceedings in this case. It will avoid extraordinarily broad discovery into dozens of previously litigated OPDA *Brady* violations, many of which occurred decades ago and would be difficult if not impossible to prove de novo. Granting this motion will allow for a more focused and efficient trial, by avoiding dozens of "mini-trials" regarding the OPDA *Brady* violations that already have been adjudicated by the courts. And it will provide the jury with the most probative, trustworthy evidence available of the OPDA's history of *Brady* violations.

### III. Discussion

**Appendix A – Federal Court Rulings Recognizing Brady Violations by OPDA**

Reeder's Appendix A to his motion in limine consists of 11 rulings in which a federal court has held that the OPDA violated *Brady*, including two such rulings by the United States Supreme Court. Reeder contends that because the OPDA has already unsuccessfully litigated the *Brady* issue in these federal cases, the OPDA is now barred from relitigating the *Brady* violations in these cases, and their holdings and findings are established as a matter of law through the federal doctrine of non-mutual collateral estoppel. Reeder maintains that the federal court rulings in Appendix A satisfy each of the conditions necessary under federal law to apply non-mutual collateral estoppel.

Williams's position is that collateral estoppel is not appropriate because the OPDA was not a party to the case, or in privity with a party. Additionally, in all but one of the cases, the decision that Reeder seeks to use for preclusive purposes is a federal habeas ruling that is inconsistent with one or more un-vacated state-court decisions on the same issue. Because of these inconsistent judgments, and particularly in light of the rule that allows a petitioner to repeatedly reassert previously rejected claims in an habeas corpus action without regard to res judicata, it is fundamentally unjust to allow a plaintiff to use habeas decisions offensively against the OPDA. Williams also argues that Reeder's invocation of non-mutual collateral estoppel also fails because that doctrine cannot be used against a government entity such as the OPDA.

Each of the contested legal issues presented in Reeder's motion in limine and Williams's opposition were addressed by Judge Milazzo in the case of *Jones v.*

*Cannizzaro*, No. 18-503, 2019 WL 2289470 (E.D. La. May 28, 2019), wherein she rejected the same arguments that Williams is raising in opposition to Reeder's motion. This Court finds Judge Milazzo's reasoning to be sound and adopts it herein. Therefore, the Court grants Reeder's motion in limine insofar as he seeks a ruling that Williams will not be allowed to relitigate the 11 federal court rulings found in Appendix A to his motion, in which federal courts found that the OPDA committed *Brady* violations.

**Appendix B – Federal and State Court Rulings Recognizing Brady Violations by OPDA**

Similarly, for the reasons provided by Judge Milazzo in *Jones v. Cannizzaro*, the Court finds that all of the court rulings listed in Appendix B to Reeder's motion are not rendered inadmissible due to hearsay problems, and may be used as proof of the *Brady* violations by the OPDA identified therein.[5]

**IV.    Conclusion**

In sum, Williams will not be allowed to relitigate the federal court determinations contained in Appendix A to his motion, and the court rulings listed in Appendix B will not be excluded on hearsay grounds. Ultimate admissibility at trial is not before the Court today.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion in Limine to (1) Preclude Re-Litigation of OPDA *Brady* Violations Recognized in Federal Court Rulings, and (2) Admit Court**

---

[5] Williams correctly observes that the evidentiary portion of Reeder's motion seeks only to adjudicate whether introduction of the documents is barred by the rules regarding hearsay and so Williams limited his objections accordingly. (Rec. Doc. 79, Opposition at 1 n.1). The Court's ruling is likewise limited to the issue of whether the documents are excludable as hearsay and not whether any specific document will actually be admissible at trial.

**Rulings Recognizing OPDA *Brady* Violations (Rec. Doc. 69)** filed by the plaintiff, Kuantay Reeder, is **GRANTED** as explained above.

December 20, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE