UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KUANTAY REEDER                                         CIVIL ACTION

VERSUS                                                 NO: 22-4614

JASON WILLIAMS,                                        SECTION: "A" (1)
*in his official capacity as Orleans*
*Parish District Attorney*

### ORDER AND REASONS

The following motions are before the Court: **Motion to Exclude Expert Testimony Concerning Lost Wages (Rec. Doc. 87)** and **Motion to Exclude Expert Testimony of Dane Ciolino (Rec. Doc. 88)** filed by the defendant, Jason R. Williams, in his official capacity as Orleans Parish District Attorney. The plaintiff, Kuantay Reeder, opposes the motions. The motions, submitted for consideration on April 16, 2025, are before the Court on the briefs without oral argument.

**I.    Background**

In this action brought under 42 U.S.C. § 1983, Kuantay Reeder seeks damages as a result of the violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by the Orleans Parish District Attorney's Office ("OPDA") in conjunction with his prosecution and conviction for murder in the 1990s. Although all of the tortious conduct alleged against the OPDA occurred well before Jason Williams took office, as the current district attorney, Williams, in his official capacity, is the proper defendant for the § 1983 claim.

In 1995, Kuantay Reeder, the plaintiff herein, was prosecuted by Orleans Parish

District Attorney Harry Connick, and convicted (following a prior mistrial based on a hung jury) of second-degree murder in connection with the death of Mark Broxton. Earl Price was the State's sole testifying eyewitness. Reeder was sentenced to life imprisonment.

Reeder's conviction was affirmed on appeal but Reeder continued to challenge the validity of his conviction through post-conviction proceedings. In 2009, Reeder's post-conviction counsel discovered that Earl Price had a prior criminal conviction and that the OPDA had withheld that information from Reeder when he was tried. Extensive litigation on this *Brady*[1] issue ensued in the following years but Reeder was denied relief in both the state and federal courts. *See, e.g., Reeder v. Vannoy*, 978 F.3d 272 (5th Cir. 2020). The various courts were persuaded that Price's undisclosed conviction was relatively minor when compared to Price's other several *disclosed* convictions and therefore cumulative; *Brady*'s materiality requirement was not met. *Id.* at 279.

Jason Williams, the current district attorney for Orleans Parish, took office in 2021 and instituted a Civil Rights Division in his organization for the purpose of redressing past harms and injustices that the OPDA had caused to defendants under prior regimes. The staff set out to identify cases that involved State misconduct, particularly those involving wrongful convictions and extreme sentences. (Rec. Doc. 1, Complaint ¶ 59). The Civil Rights Division reviewed the prosecution's original file in Reeder's case, which revealed the existence of "significant exculpatory evidence" that had never been

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation requires proof of three elements: (1) that the prosecution suppressed evidence, (2) that it was favorable to the defendant, and (3) that it was material. *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011) (citing *United States v. Skilling*, 554 F.3d 529, 574 (5th Cir. 2008)).

disclosed to Reeder or his counsel.[2] (*Id.* ¶ 60). Specifically, during its review of the original criminal case file, the Civil Rights Division discovered two sets of handwritten notes, detailing that on two separate occasions Earl Price had notified prosecutors that he had identified alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. (*Id.* ¶¶ 63-65). In June 2021, Williams, through the Civil Rights Division of his office, produced the previously-withheld information to Reeder's attorney. (*Id.*). Even beyond withholding the potentially exculpatory material, Reeder contends that the prosecutors in 1995 knowingly misled the jury because at trial they portrayed Earl Price as unwavering in his identification of Reeder as the shooter. (*Id.* ¶ 68).

In August 2021, Reeder supplemented his state application for post-conviction relief with the newly-disclosed exculpatory evidence. In response, the OPDA filed stipulations acknowledging *inter alia* that Reeder's conviction and incarceration were in violation of the Constitution. (*Id.* ¶ 98). At a hearing held on December 6, 2021, three remarkable things occurred: a state criminal judge vacated Reeder's conviction for second-degree murder, the OPDA immediately declined all charges against Reeder, and Reeder walked out of Angola Penitentiary after being incarcerated for over twenty-eight years. (*Id.* ¶ 100).

Following his release, Reeder filed this civil action against Jason Williams, in his official capacity, seeking to hold the OPDA liable pursuant to 42 U.S.C. § 1983 for the injuries and damages that Reeder suffered for being unconstitutionally deprived of his

---

[2] Part of the impetus for the Civil Rights Division's review of Reeder's original case file was that Reeder had sought review with the United States Supreme Court of the Fifth Circuit's decision affirming the district court's rejection of his federal habeas petition. In connection with that pending writ application the Supreme Court had ordered a response from the Orleans Parish District Attorney.

freedom for more than half of his life (Mr. Reeder was 50 years old when he filed this lawsuit), that deprivation having been caused by violations of his rights guaranteed by *Brady v. Maryland, supra*. Reeder alleges that the OPDA violated his constitutional rights by withholding favorable evidence, that at all times relevant the OPDA maintained an unconstitutional policy with respect to the obligation to disclose favorable information to the defendants that it prosecuted, and that the OPDA failed to properly train and supervise its prosecutors with respect to *Brady* obligations.

Williams responded to Reeder's complaint with a motion to dismiss grounded on the contention that the actions that form the basis of Reeder's claims are attributable to the State of Louisiana—which is not a "person" for purposes of § 1983—and not to the OPDA as an independent local government entity. On April 4, 2023, the Court denied that motion. (Rec. Doc. 25, Order and Reasons); *Reeder v. Williams*, No. 22-4614, 2023 WL 2771481 (E.D. La. Apr. 4, 2023). Williams then answered the complaint and a jury trial was calendared for March 18, 2024. (Rec. Doc. 30, Scheduling Order). The Court ultimately vacated the prior scheduling order and trial date at the unopposed request of Reeder. (Rec. Doc. 47, Order). The parties then selected December 2, 2024, as the new trial date. (Rec. Doc. 50, Scheduling Order).

Reeder moved for partial summary judgment in his favor on the element of his claim under § 1983 that requires him to establish that he has been deprived of a right, privilege, or immunity secured by the United States Constitution. (Rec. Doc. 31, Motion for Partial Summary Judgment). More specifically, Reeder moved for partial summary judgment on the claim that his *Brady* rights were violated because the OPDA failed to disclose (prior to his trial) the exculpatory information pertaining to Earl Price's

identification of alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. As grounds for the motion, Reeder invoked the doctrine of res judicata (issue preclusion) based upon the stipulations that Williams's office filed in 2021 in response to Reeder's application for state post-conviction relief, and the judgment and findings of Judge Rhonda Goode-Douglas, the criminal court judge who relied on those stipulations when granting Reeder's motion to vacate his conviction at the December 6, 2021 hearing. On December 6, 2023, the Court denied that motion for partial summary judgment insofar as Reeder sought to rely on nonparty res judicata to relieve him of his burden of proof in this § 1983 case (Rec. Doc. 48, Order and Reasons); *Reeder v. Williams*, No. 22-4614, 2023 WL 8449261 (E.D. La. Dec. 6, 2023).

On November 14, 2024, over Reeder's objection, the Court vacated the prior scheduling order and entered a new Case Management Order in light of the complexity of this case. (Rec. Doc. 78, Case Management Order). A jury trial has been scheduled for September 15, 2025. (*Id.*).

    **II.**    **Williams's Motion to Exclude Evidence of Lost Wages**

Williams seeks to exclude the evidence that Reeder intends to introduce at trial pertaining to the lost wages that he claims to have suffered due to being incarcerated for over 26 years. Specifically, Elizabeth Martina, Reeder's vocational rehabilitation counselor and life care planner, has surmised that absent being convicted and sent to prison, Reeder would have become a highly compensated electrician. Reeder's accountant, Harold Asher, has used this premise to opine that Reeder should be entitled to $2,286,663 consisting of past and future lost wages and benefits. Williams contends that both experts' evidence of lost wages/benefits should be excluded because it

completely ignores Reeder's pre-incarceration employment, which was not impressive, as well as his pre-incarceration criminal record, which was extensive. Instead, Martina's opinion is based on one aspect of Reeder's post-incarceration employment (Asher's calculations are based on Martina's theory), which Williams claims is not only highly speculative but also contrary to binding Fifth Circuit precedent.[3]

      The first point of contention is the legal question of whether the calculation of lost income begins with the gross earnings of the injured party at the time of the injury as noted in *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983), which was a maritime personal injury case. In fact, Reeder contends that all of Williams's cases are inapplicable because none of them are § 1983 cases, and according to Reeder, § 1983 cases are governed by a more liberal standard.

      The Court has reviewed the cases cited by both parties. On the one hand, the maritime cases cited by Williams are not necessarily so narrow as to apply only in the context of a personal injury lawsuit, based on maritime law or otherwise. But on the other hand, the civil rights cases cited by Reeder do not suggest that in a § 1983 action for wrongful conviction/incarceration, a lost wage claim ignores pre-incarceration employment history. Reeder had an extensive criminal history prior to his allegedly wrongful conviction and incarceration and he had a sketchy employment history at best. He had no training whatsoever as an electrician and nothing in his pre-incarceration past indicates that he would have ever pursued training as an electrician. Reeder's post-incarceration efforts have been laudable but arguably they provide a highly speculative

---

[3] Williams is not seeking to exclude the experts' opinions concerning projected future medical expenses.

foundation for Martina's theory of lost wages absent the wrongful conviction.

The sole question for the Court to decide is whether Martina's (and therefore Asher's) opinions are so irrelevant and unreliable as to require exclusion pursuant to the Court's gatekeeping obligation under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, or whether as Reeder suggests, the jury should be allowed to decide whether Martina's opinion—that Reeder would not have spent his life as a drug dealer or in jail—but instead would have become more like how he is today just much sooner. Reeder points out that Williams is free to cross-examine Martina at length regarding her expert conclusions.[4] The Court agrees.

There is a fundamental difference between a discrete injury to someone's person that prevents him prospectively from performing the employment that he had been performing up until the time of an injury, and an injury like a wrongful conviction that for every day the person is incarcerated in violation of his rights may have prevented that person from making a positive life-changing decision to do something different, such as becoming an electrician. In the personal injury scenario, the physical injury may foreclose what the plaintiff had been doing for his livelihood leading immediately up to the injury so it makes sense that the income stream should be based on pre-injury income. But in the wrongful conviction scenario, the plaintiff may have been foreclosed every day for decades from making a better life for himself, which people sometimes do against all odds. Perhaps Reeder could have changed his life for the better had he not

---

[4] And of course, Williams would be free to explore at length with Reeder his pre-incarceration criminal history and poor employment record. Such evidence is relevant in light of Reeder's lost wage claim and cannot be excluded regardless of its potential prejudice.

spent over 26 years in prison. The Court is persuaded that he should be allowed to make his case to the jury.

But Williams also takes issue with the fact that Reeder's lost wage/benefit numbers are based on an injury date in 1991, when the allegedly wrongful conviction did not occur until 1995. This of course, must be corrected as Reeder notes in his opposition. Further, Williams takes issue with the fact that Reeder's lost wage/benefit numbers are based on straight wages only and do not account for expenses that Reeder would have sustained had he been out of prison and working as an electrician. To the extent the Reeder argues in his opposition (the Court is not clear on this point) that such reductions are not applicable in constitutional tort cases where lost wages/benefits are being sought, the Court does not agree. Reeder must have Asher's report amended to reflect not only an injury onset date of 1995 but also to reduce the lost wages/benefits numbers by an appropriate discount for expenses that would have been incurred. But in all other respects, the motion to exclude Reeder's expert evidence of lost wages is denied.

### III.     Williams's Motion to Exclude Expert Testimony of Dane Ciolino

Reeder retained Professor Dane Ciolino to offer expert testimony on whether the standard of care regarding a prosecutor's duty to disclose exculpatory information was breached in the prosecution of Reeder, and whether the OPDA policies in effect during the prosecution breached the standard of care applicable in the supervision of prosecutors. Ciolino produced a report in which he opined that the OPDA failed to comply with the standards of care and conduct governing prosecutors and their constitutional obligations to provide *Brady* material in the 1994 and 1995 prosecutions of

Kuantay Reeder, and that the OPDA Policy Manual in effect at the time of the prosecutions was inadequate to convey those obligations to its staff. (Rec. Doc. 88-3, Ciolino report at 27). Ciolino was later deposed regarding his report. (Rec. Doc. 88-4, Ciolino deposition).

Williams moves to exclude Ciolino's testimony arguing that most of Ciolino's opinions are not helpful to the jury because they concern "standards of care" that are not relevant to the legal elements of a claim for a *Brady* violation. Williams argues that other opinions offered in the report constitute impermissible legal conclusions that either tell the jury what conclusion they should reach or usurp the Court's role in determining the law to apply and instructing the jury on that law.

The plaintiff seeking to recover for a *Brady* violation in a § 1983 lawsuit must establish three elements: 1) that the State suppressed evidence by failing to disclose it to the defendant; 2) that the undisclosed evidence was favorable to the defendant by helping to show the defendant's innocence or by impeaching an unfavorable witness; and 3) that the nondisclosure prejudiced the defendant because it was "material," *i.e.*, there is a "reasonable probability" that the trial outcome would have changed if the prosecution had turned over the evidence. *Clark v. Louisville-Jefferson Cty. Metro Gov.*, No. 24-5061, 2025 WL 732838, at *5, -- F.4th -- (6th Cir. Mar. 7, 2025) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Ciolino's thirty-page report contains the following succinct conclusions:

> My opinion is that the OPDA failed to comply with the standard of care and conduct governing prosecutors and their constitutional obligations to provide *Brady* material in the 1994 and 1995 prosecutions of Kuantay Reeder. In addition, my opinion is that the OPDA Policy Manual in effect at the time of these prosecutions was inadequate to convey these obligations

>to its staff.

(Rec. Doc. 88-3, Ciolino report at 27).

In response to Williams's motion to exclude, Reeder clarifies in his opposition that he will not seek to offer Ciolino's opinions about whether a *Brady* violation occurred in his case thereby rendering Williams's concerns about Ciolino attempting to testify about an "ultimate legal conclusion" to be moot. (Rec. Doc. 95, Opposition at 5-6). Reeder contends, however, that Ciolino should be permitted to offer opinions relating to the underlying facts of the case without offering a legal conclusion as to whether the *Brady* standard was satisfied.

Ciolino is not a fact witness. And liability in this case turns on whether a *Brady* violation occurred. The Court agrees with Williams that aside from whether a *Brady* violation occurred in Reeder's criminal prosecution, there is simply nothing left for Ciolino to opine about.[5] Aside from the aspects of the report that discuss the law pertaining to *Brady* obligations and why Ciolino believes that a *Brady* violation did in fact occur (which Reeder now concedes he will not attempt to elicit at trial), Ciolino's opinions are based on state law ethical standards and ABA opinions, that do not constitute federal law. Reeder's § 1983 claim is governed by federal law not state law. The Court agrees with Williams's contention that it would confuse the jury to allow Ciolino to testify regarding state law ethical standards that will not govern liability in this case.

Ciolino devotes a section of his report to opining as to why the 1987 OPDA Policy

---

[5] To be clear, the Court is not suggesting that it would be acceptable for Ciolino to opine on whether a *Brady* violation did occur. That issue is for the jury to decide based on the law and the facts.

Manual fails to adequately set forth a prosecutor's *Brady* obligations, that the Policy is vague, and simply inadequate. (Rec. Doc. 88-3, Ciolino report at 21-27). Williams contends that this opinion is irrelevant because Ciolino does not know how the Policy Manual was actually used or what other actions were taken to train or supervise prosecutors. The Court agrees. Moreover, the Court is at a loss to understand how Ciolino would offer opinions regarding the Policy Manual's compliance with a prosecutor's *Brady* obligations under federal law without being allowed to testify as to the legal standards that will govern this case. Those legal standards will be given to the jury by the Court not by an expert witness.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Exclude Expert Testimony Concerning Lost Wages (Rec. Doc. 87)** filed by the defendant, Jason R. Williams, in his official capacity as Orleans Parish District Attorney, is **DENIED** as explained above.

**IT IS FURTHER ORDERED** that Reeder must amend his expert reports (Martina and Asher) as explained above and produce the amended report(s) to the defense within three (3) weeks of entry of this Order and Reasons.

**IT IS FURTHER ORDERED** that the **Motion to Exclude Expert Testimony of Dane Ciolino (Rec. Doc. 88)** filed by the defendant, Jason R. Williams, in his official capacity as Orleans Parish District Attorney, is **GRANTED** as explained above.

April 16, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE