UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KUANTAY REEDER                          CIVIL ACTION

VERSUS                                     NO: 22-4614

JASON WILLIAMS,                     SECTION: "A" (1)
*in his official capacity as Orleans*
*Parish District Attorney*

**ORDER AND REASONS**

The following motion is before the Court: **Motion in Limine to Exclude Any and All Evidence Related to Any Statements Attributed to Norma Varist (Rec. Doc. 101)** filed by the plaintiff, Kuantay Reeder. The defendant, Jason R. Williams, in his official capacity as Orleans Parish District Attorney, opposes the motion. The motion, submitted for consideration on May 14, 2025, is before the Court on the briefs without oral argument.[1]

**I.    Background**

In this action brought under 42 U.S.C. § 1983, Kuantay Reeder seeks damages as a result of the violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by the Orleans Parish District Attorney's Office ("OPDA") in conjunction with his prosecution and conviction for murder in the 1990s. Although all of the tortious conduct alleged against the OPDA occurred well before Jason Williams took office, as the current district attorney, Williams, in his official capacity, is the proper defendant for the

---

[1] The plaintiff has requested oral argument but the Court is not persuaded that oral argument would be helpful in light of the issues presented.

§ 1983 claim.

In 1995, Kuantay Reeder, the plaintiff herein, was prosecuted by Orleans Parish District Attorney Harry Connick, and convicted (following a prior mistrial based on a hung jury) of second-degree murder in connection with the death of Mark Broxton. On April 13, 1993, Broxton was shot four times while using a pay phone outside of Julien's Grocery in Algiers, Louisiana. Broxton died later that evening while undergoing surgery. Earl Price was the State's sole testifying eyewitness to the murder. Reeder was sentenced to life imprisonment.

Reeder's conviction was affirmed on appeal but Reeder continued to challenge the validity of his conviction through post-conviction proceedings. In 2009, Reeder's post-conviction counsel discovered that Earl Price had a prior criminal conviction and that the OPDA had withheld that information from Reeder when he was tried. Extensive litigation on this *Brady*[2] issue ensued in the following years but Reeder was denied relief in both the state and federal courts. *See, e.g., Reeder v. Vannoy*, 978 F.3d 272 (5th Cir. 2020). The various courts were persuaded that Price's undisclosed conviction was relatively minor when compared to Price's other several *disclosed* convictions and therefore cumulative; *Brady*'s materiality requirement was not met. *Id.* at 279.

Jason Williams, the current district attorney for Orleans Parish, took office in 2021 and instituted a Civil Rights Division in his organization for the purpose of redressing past harms and injustices that the OPDA had caused to defendants under prior regimes.

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation requires proof of three elements: (1) that the prosecution suppressed evidence, (2) that it was favorable to the defendant, and (3) that it was material. *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011) (citing *United States v. Skilling*, 554 F.3d 529, 574 (5th Cir. 2008)).

The staff set out to identify cases that involved State misconduct, particularly those involving wrongful convictions and extreme sentences. (Rec. Doc. 1, Complaint ¶ 59). The Civil Rights Division reviewed the prosecution's original file in Reeder's case, which revealed the existence of "significant exculpatory evidence" that had never been disclosed to Reeder or his counsel.³ (*Id.* ¶ 60). Specifically, during its review of the original criminal case file, the Civil Rights Division discovered two sets of handwritten notes, detailing that on two separate occasions Earl Price had notified prosecutors that he had identified alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. (*Id.* ¶¶ 63-65). In June 2021, Williams, through the Civil Rights Division of his office, produced the previously-withheld information to Reeder's attorney. (*Id.*). Even beyond withholding the potentially exculpatory material, Reeder contends that the prosecutors in 1995 knowingly misled the jury because at trial they portrayed Earl Price as unwavering in his identification of Reeder as the shooter. (*Id.* ¶ 68).

In August 2021, Reeder supplemented his state application for post-conviction relief with the newly-disclosed exculpatory evidence. In response, the OPDA filed stipulations acknowledging *inter alia* that Reeder's conviction and incarceration were in violation of the Constitution. (*Id.* ¶ 98). At a hearing held on December 6, 2021, three remarkable things occurred: a state criminal judge vacated Reeder's conviction for second-degree murder, the OPDA immediately declined all charges against Reeder, and Reeder walked out of Angola Penitentiary after being incarcerated for over twenty-

---

³ Part of the impetus for the Civil Rights Division's review of Reeder's original case file was that Reeder had sought review with the United States Supreme Court of the Fifth Circuit's decision affirming the district court's rejection of his federal habeas petition. In connection with that pending writ application the Supreme Court had ordered a response from the Orleans Parish District Attorney.

eight years. (*Id.* ¶ 100).

Following his release, Reeder filed this civil action against Jason Williams, in his official capacity, seeking to hold the OPDA liable pursuant to 42 U.S.C. § 1983 for the injuries and damages that Reeder suffered for being unconstitutionally deprived of his freedom for more than half of his life (Mr. Reeder was 50 years old when he filed this lawsuit), that deprivation having been caused by violations of his rights guaranteed by *Brady v. Maryland, supra.* Reeder alleges that the OPDA violated his constitutional rights by withholding favorable evidence, that at all times relevant the OPDA maintained an unconstitutional policy with respect to the obligation to disclose favorable information to the defendants that it prosecuted, and that the OPDA failed to properly train and supervise its prosecutors with respect to *Brady* obligations.

Williams responded to Reeder's complaint with a motion to dismiss grounded on the contention that the actions that form the basis of Reeder's claims are attributable to the State of Louisiana—which is not a "person" for purposes of § 1983—and not to the OPDA as an independent local government entity. On April 4, 2023, the Court denied that motion. (Rec. Doc. 25, Order and Reasons); *Reeder v. Williams*, No. 22-4614, 2023 WL 2771481 (E.D. La. Apr. 4, 2023). Williams then answered the complaint and a jury trial was calendared for March 18, 2024. (Rec. Doc. 30, Scheduling Order). The Court ultimately vacated the prior scheduling order and trial date at the unopposed request of Reeder. (Rec. Doc. 47, Order). The parties then selected December 2, 2024, as the new trial date. (Rec. Doc. 50, Scheduling Order).

Reeder moved for partial summary judgment in his favor on the element of his claim under § 1983 that requires him to establish that he has been deprived of a right,

privilege, or immunity secured by the United States Constitution. (Rec. Doc. 31, Motion for Partial Summary Judgment). More specifically, Reeder moved for partial summary judgment on the claim that his *Brady* rights were violated because the OPDA failed to disclose (prior to his trial) the exculpatory information pertaining to Earl Price's identification of alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. As grounds for the motion, Reeder invoked the doctrine of res judicata (issue preclusion) based upon the stipulations that Williams's office filed in 2021 in response to Reeder's application for state post-conviction relief, and the judgment and findings of Judge Rhonda Goode-Douglas, the criminal court judge who relied on those stipulations when granting Reeder's motion to vacate his conviction at the December 6, 2021 hearing. On December 6, 2023, the Court denied that motion for partial summary judgment insofar as Reeder sought to rely on nonparty res judicata to relieve him of his burden of proof in this § 1983 case (Rec. Doc. 48, Order and Reasons); *Reeder v. Williams*, No. 22-4614, 2023 WL 8449261 (E.D. La. Dec. 6, 2023).

On November 14, 2024, over Reeder's objection, the Court vacated the prior scheduling order and entered a new Case Management Order in light of the complexity of this case. (Rec. Doc. 78, Case Management Order). A jury trial has been scheduled for September 15, 2025. (*Id.*).

**II.    Reeder's Motion to Exclude Evidence Related to Norma Varist**

Reeder seeks to exclude any and all statements attributed to Norma Varist from the trial of this matter and any evidence regarding any purported identification by Varist

of Reeder as the person who shot Mark Broxton on April 13, 1993.[4]

Twenty days after the 1993 Broxton murder, Varist contacted Detective Wesley Morris and stated to him that she had witnessed Reeder shoot Broxton. Varist and Reeder had known each other, and Varist told Morris that Reeder came to her apartment after the murder.

Varist did not testify at either of Reeder's trials. The DA's notes indicate that before Reeder's first trial, Varist had already begun to deny that she had seen anything, and that she was demanding to be paid otherwise she would not come to court. (Rec. Doc. 101-3, Exhibit 2).

For Reeder's second trial, the OPDA had Varist arrested on a material witness warrant but when called to testify she refused. (Rec. Doc. 101-8, Exhibit 7). But the trial judge (Judge Calvin Johnson) allowed two other witnesses, Mary Menina and Detective Morris, to testify regarding their conversations with Varist, in which she had identified Reeder as the person who had shot Mark Broxton. According to Reeder the district judge allowed the OPDA to do indirectly what it could not do directly. Reeder points out that the OPDA (via representatives of Jason Williams's office) acknowledged in the Stipulations filed in response to his application for post-conviction relief that the prosecutors should not have elicited testimony regarding Varsit's statements at Reeder's criminal trial. (Rec. Doc. 31-2, Stipulations at 11-12).

Varsit is now deceased. Reeder argues that any statements by her regarding the

---

[4] Reeder points out that some of the documents in the case spell Varist with an "e" at the end, *i.e.*, "Variste." Consistent with the district court trial transcripts, and her obituary, Reeder has spelled Varist's name without the "e," (Rec. Doc. 101-1, Memorandum in Support at 1 n.1), which this Court will likewise do.

shooting of Mark Broxton would be hearsay that could satisfy no exception to the hearsay rules. Reeder also points out how Varsit's rendition of the facts, which again was introduced at his criminal trial through the testimony of Menina and Morris, could not have been correct. Reeder also cites all of the reasons that Varist would not have been a credible witness.

In opposition, Williams argues that Varist's statements are not hearsay because they are not being offered for the truth of the matter asserted, *i.e.*, that Reeder was the person who shot Broxton on the night of the murder. Williams argues that the testimony of Menina and Morris as to Varist's statements, like *all* of the testimony and evidence entered at Reeder's second trial (the one resulting in his conviction) is relevant to assess materiality and causation with respect to Reeder's *Brady* claim. Williams points that the materiality of suppressed evidence (Earl Price's identification of alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter) must be evaluated in the context of the entire record, and that there can be no *Brady* violation unless the suppressed evidence would have produced a different verdict.

The Court is persuaded that Williams has the better argument. The jury in this case will not be asked to determine who shot Mark Broxton because Reeder is pursuing a *Brady* claim, which does not include factual innocence as an element. So Varist's statements are not hearsay, *i.e.*, are not offered for the truth of the matter asserted, in this civil case.[5] It matters not whether the statements were hearsay and perhaps should have been excluded at Reeder's second trial because they were admitted at the trial

---

[5] In his reply, Reeder asserts that admitting Menina's and Morris's testimony would deprive him of his confrontation clause right to confront his accusers. (Rec. Doc. 108, Reply at 4). Reeder is not on trial for murder in this civil case and he is not the accused in this case.

and the jury that convicted Reeder considered them when reaching its verdict. And it matters not whether Varist would have been an incredible witness. The jury in this case will determine whether Reeder has proved his *Brady* claim. The Court agrees that in order for the jury in this case to determine materiality with respect to the evidence that Reeder claims was the subject of the *Brady* violation, the jury must be able to consider all of the evidence that was presented to the criminal jury that convicted Reeder, whether or not it should have been admitted.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion in Limine to Exclude Any and All Evidence Related to Any Statements Attributed to Norma Varist (Rec. Doc. 101)** filed by the plaintiff, Kuantay Reeder, is **DENIED** as explained above.

May 16, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE