UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KUANTAY REEDER | CIVIL ACTION |
| VERSUS | NO: 22-4614 |
| JASON WILLIAMS,<br>*in his official capacity as Orleans*<br>*Parish District Attorney* | SECTION: "A" (1) |

# ORDER AND REASONS

The following motion is before the Court: **Motion to Exclude Expert Testimony of Christian Bolden (Rec. Doc. 111)** filed by the defendant, Jason R. Williams, in his official capacity as Orleans Parish District Attorney. The plaintiff, Kuantay Reeder, opposes the motion. The motion, submitted for consideration on June 11, 2025, is before the Court on the briefs without oral argument.

**I.**

In this action brought under 42 U.S.C. § 1983, Kuantay Reeder seeks damages as a result of the violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by the Orleans Parish District Attorney's Office ("OPDA") in conjunction with his prosecution and conviction for murder in 1995. Although all of the tortious conduct alleged against the OPDA occurred well before Jason Williams took office, as the current district attorney, Williams, in his official capacity, is the proper defendant for the § 1983 claim.[1]

---

[1] Under Louisiana law a district attorney's office cannot be sued in its own name. *Armstrong v. Ashley*, 60 F.4th 262, 268 n.4 (5th Cir. 2023) (citing *Hudson v. City of New Orleans*, 174

In 1995, Kuantay Reeder, the plaintiff herein, was prosecuted by Orleans Parish District Attorney Harry Connick, and convicted (following a prior mistrial based on a hung jury) of second-degree murder in connection with the death of Mark Broxton. On April 13, 1993, Broxton was shot four times while using a pay phone outside of Julien's Grocery in Algiers, Louisiana. Broxton died later that evening while undergoing surgery. Earl Price was the State's sole testifying eyewitness to the murder. Reeder was sentenced to life imprisonment.

Reeder's conviction was affirmed on appeal but Reeder continued to challenge the validity of his conviction through post-conviction proceedings. In 2009, Reeder's post-conviction counsel discovered that Earl Price had a prior criminal conviction and that the OPDA had withheld that information from Reeder when he was tried. Extensive litigation on this *Brady* issue ensued in the following years but Reeder was denied relief in both the state and federal courts. *See, e.g., Reeder v. Vannoy*, 978 F.3d 272 (5th Cir. 2020). The various courts were persuaded that Price's undisclosed conviction was relatively minor when compared to Price's other several *disclosed* convictions and therefore cumulative; *Brady*'s materiality requirement was not met.[2] *Id.* at 279.

Jason Williams, the current district attorney for Orleans Parish, took office in 2021

---

F.3d 677, 680 (5th Cir. 1999)). When suing a Louisiana district attorney's office under § 1983, any actions by a predecessor district attorney are imputed to the current district attorney in his official capacity, and the current district attorney in his official capacity is the proper defendant. *Id.*

[2] A *Brady* violation requires proof of three elements: (1) that the prosecution suppressed evidence, (2) that it was favorable to the defendant, and (3) that it was material. *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011) (citing *United States v. Skilling*, 554 F.3d 529, 574 (5th Cir. 2008)). Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 588 (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

and instituted a Civil Rights Division in his organization for the purpose of redressing past harms and injustices that the OPDA had caused to defendants under prior regimes. The staff set out to identify cases that involved State misconduct, particularly those involving wrongful convictions and extreme sentences. (Rec. Doc. 1, Complaint ¶ 59). The Civil Rights Division reviewed the prosecution's original file in Reeder's case, which revealed the existence of "significant exculpatory evidence" that had never been disclosed to Reeder or his counsel.³ (*Id.* ¶ 60). Specifically, during its review of the original criminal case file, the Civil Rights Division discovered two sets of handwritten notes, detailing that on two separate occasions Earl Price had notified prosecutors that he had identified alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. (*Id.* ¶¶ 63-65). In June 2021, Williams, through the Civil Rights Division of his office, produced the previously-withheld information to Reeder's attorney. (*Id.*). Even beyond withholding the potentially exculpatory material, Reeder contends that the prosecutors in 1995 knowingly misled the jury because at trial they portrayed Earl Price as unwavering in his identification of Reeder as the shooter. (*Id.* ¶ 68).

In August 2021, Reeder supplemented his state application for post-conviction relief with the newly-disclosed exculpatory evidence. In response, the OPDA filed stipulations acknowledging *inter alia* that Reeder's conviction and incarceration were in violation of the Constitution. (*Id.* ¶ 98). At a hearing held on December 6, 2021, three remarkable things occurred: a state criminal judge vacated Reeder's conviction for

---

³ Part of the impetus for the Civil Rights Division's review of Reeder's original case file was that Reeder had sought review with the United States Supreme Court of the Fifth Circuit's decision affirming the district court's rejection of his federal habeas petition. In connection with that pending writ application the Supreme Court had ordered a response from the Orleans Parish District Attorney.

second-degree murder, the OPDA immediately declined all charges against Reeder, and Reeder walked out of Angola Penitentiary after being incarcerated for over twenty-eight years. (*Id.* ¶ 100).

Following his release, Reeder filed this civil action against Jason Williams, in his official capacity, seeking to hold the OPDA liable pursuant to 42 U.S.C. § 1983 for the injuries and damages that Reeder suffered for being unconstitutionally deprived of his freedom for more than half of his life (Mr. Reeder was 50 years old when he filed this lawsuit), that deprivation having been caused by violations of his rights guaranteed by *Brady v. Maryland, supra*. Reeder alleges that the OPDA violated his constitutional rights by withholding favorable evidence, that at all times relevant the OPDA maintained an unconstitutional policy with respect to the obligation to disclose favorable information to the defendants that it prosecuted, and that the OPDA failed to properly train and supervise its prosecutors with respect to their *Brady* obligations.

Williams responded to Reeder's complaint with a motion to dismiss grounded on the contention that the actions that form the basis of Reeder's claims are attributable to the State of Louisiana—which is not a "person" for purposes of § 1983—and not to the OPDA as an independent local government entity. On April 4, 2023, the Court denied that motion. (Rec. Doc. 25, Order and Reasons); *Reeder v. Williams*, No. 22-4614, 2023 WL 2771481 (E.D. La. Apr. 4, 2023). Williams then answered the complaint and a jury trial was calendared for March 18, 2024. (Rec. Doc. 30, Scheduling Order). The Court ultimately vacated the prior scheduling order and trial date at the unopposed request of Reeder. (Rec. Doc. 47, Order). The parties then selected December 2, 2024, as the new trial date. (Rec. Doc. 50, Scheduling Order).

Reeder moved for partial summary judgment in his favor on the element of his claim under § 1983 that requires him to establish that he has been deprived of a right, privilege, or immunity secured by the United States Constitution. (Rec. Doc. 31, Motion for Partial Summary Judgment). More specifically, Reeder moved for partial summary judgment on the claim that his *Brady* rights were violated because the OPDA failed to disclose (prior to his trial) the exculpatory information pertaining to Earl Price's identification of alternate suspect Berzeracque "Byrd" Johnson as Broxton's shooter. As grounds for the motion, Reeder invoked the doctrine of res judicata (issue preclusion) based upon the stipulations that Williams's office filed in 2021 in response to Reeder's application for state post-conviction relief, and the judgment and findings of Judge Rhonda Goode-Douglas, the criminal court judge who relied on those stipulations when granting Reeder's motion to vacate his conviction at the December 6, 2021 hearing. On December 6, 2023, the Court denied that motion for partial summary judgment insofar as Reeder sought to rely on nonparty res judicata to relieve him of his burden of proof in this § 1983 case (Rec. Doc. 48, Order and Reasons); *Reeder v. Williams*, No. 22-4614, 2023 WL 8449261 (E.D. La. Dec. 6, 2023).

On November 14, 2024, over Reeder's objection, the Court vacated the prior scheduling order and entered a new Case Management Order in light of the complexity of this case. (Rec. Doc. 78, Case Management Order). A jury trial has been scheduled for September 15, 2025. (*Id.*).

The Court has previously ruled on several motions in limine filed by the parties. (Rec. Doc. 86, Motion in limine pertaining to re-litigation and admission of *Brady* rulings); (Rec. Doc. 100, Motion in limine pertaining to lost wages and Dane Ciolino);

(Rec. Doc. 114, Motion in limine pertaining to Varist statements).

## II.

Reeder has retained Christian L. Bolden, Ph.D. to provide expert testimony in support of his claim for damages. Dr. Bolden is an associate professor and department chair of Criminology and Justice at Loyola University New Orleans. He is a sociologist and criminologist specializing in street gangs, human trafficking, and the life histories and reentry trajectory of individuals who were incarcerated more than 20 years. (Rec. Doc. 111-3, Bolden report at 1). As part of his work, Bolden has interviewed numerous (92) individuals who were formerly serving life or de facto life sentences in Louisiana. (*Id.*). Bolden teaches undergraduate and graduate courses on the causes, consequences, and experiences of incarceration. (*Id.*).

Bolden interviewed Reeder by telephone to discuss Reeder's experiences in prison and the problems that Reeder has faced following his release. Bolden was given a copy of the report prepared by Reeder's expert psychologist, Dr. Kathryn Lawing, following her extensive psychological evaluation of Reeder. Dr. Lawing has opined that being incarcerated at Angola for over 26 years either caused or exacerbated various mental health conditions, including post-traumatic stress disorder (PTSD), generalized anxiety disorder, obsessive compulsive disorder, and major depressive disorder.[4] (Rec. Doc. 111-1, Memorandum in Support at 1). Based on Lawing's diagnoses and what Bolden learned from Reeder during the phone interview, Bolden has produced an expert report in which he has opined that Reeder is experiencing symptoms consistent with the

---

[4] Williams does not seek to exclude any of Dr. Lawing's opinions. (Memorandum in Support at 2).

criteria for post-incarceration syndrome. (Bolden report at 10).

The possible existence of a particular species of PTSD called post-incarceration syndrome (PIS) that may be experienced by ex-prisoners who are released from serving a life sentence was discussed in an article published in 2013 by two researchers. (*Id.* at 4); (Rec. Doc. 111-5, Exhibit 3 (Liem & Kunst article). For the article, the researchers conducted exploratory research by interviewing 25 ex-prisoners, and based on the results the researchers argued that additional research into PIS should be conducted. They also argued in favor of modifying the PTSD diagnosis found in the Diagnostic and Statistical Manual of Mental Disorders, fifth edition (DSM-V), to include criteria for PIS as a subtype of PTSD. (Liem & Kunst article at 4). For whatever reasons, this did not occur.

In his deposition, Bolden testified that he has never testified as an expert on PIS and was not aware of any other expert who had testified in court as an expert in PIS. (Rec. Doc. 111-4, Exhibit 2 Bolden deposition at 35-36). Bolden described his area of expertise as "the experiences of incarceration," and that PIS is "just one minor thing that fits into that." (*Id.* at 36).

In his deposition, Bolden denied that he was diagnosing Reeder with PIS because sociologists do not diagnose individuals, (*id.* at 14), and they do not study individual behavior, (*id.* at 13). Bolden admitted that he was not qualified to diagnose individual persons with mental health disorders. (*Id.* at 20). Rather, sociologists look at groups of individuals to study why a particular demographic behaves in a certain way. (*Id.* at 13). As for Reeder, Bolden clarified that he was not diagnosing him with PIS but rather is opining that Reeder's symptoms match the characteristics of PIS; that he fits

the pattern. (*Id.* at 21, 23).

Williams now moves to exclude Bolden's testimony in its entirety. Williams argues that PIS has not been generally accepted or proven in the scientific community, that Bolden's expertise does not allow him to opine as to whether Reeder suffers from it (assuming that PIS is even a legitimate mental health syndrome), and therefore that Bolden's opinions are irrelevant. Williams also argues that Bolden's testimony, which relies completely on the diagnosis provided by Dr. Lawing, is cumulative of her testimony.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (Testimony by Expert Witnesses).

Only relevant evidence is admissible. *See* Fed. R. Evid. 402 (General Admissibility of Relevant Evidence) ("Irrelevant evidence is not admissible."). Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action. Fed. R. Evid. 401 (Test for Relevant Evidence). The court may exclude relevant

evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403 (Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons).

The Court is persuaded that Bolden's testimony should be excluded essentially for all of the reasons argued by Williams. PIS purports to be a mental health disorder. By Dr. Bolden's own admission, he is not qualified to diagnose Reeder with PIS or any other mental health disorder. Bolden's expertise pertains to groups not individuals. Bolden can only opine that Reeder, who has been diagnosed with several health disorders by Dr. Lawing, is exhibiting symptoms consistent with what some other ex-prisoners have exhibited. That opinion is not probative of Reeder's claim for damages. Furthermore, Reeder must and will testify on his own behalf regarding his traumatic experiences in prison. Dr. Bolden cannot testify for him.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Exclude Expert Testimony of Christian Bolden (Rec. Doc. 111)** filed by the defendant, Jason R. Williams, in his official capacity as Orleans Parish District Attorney, is **GRANTED**. The expert testimony and report of Christian Bolden, Ph.D. are excluded as explained above.

June 17, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE